UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA COPPOLA, et al.,<br><br>    Plaintiffs<br><br>    v.<br><br>GREGORY SMITH, et al.,<br><br>    Defendants<br><br>AND RELATED COUNTERCLAIMS AND CROSSCLAIMS | CASE NO. 1:11-CV-1257 AWI BAM<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE<br><br>(Doc. Nos. 123, 129) |

This is an environmental law case that arises from the chemical contamination of property surrounding a dry cleaning business. Plaintiffs (collectively "Coppola") have brought suit against inter alia the California Water Service Company ("Cal Water") and Martin and Martin Properties ("Martin"). The Court previously dismissed the third amended complaint under Rule 12(b)(6). The active complaint is the Fourth Amended Complaint ("FAC"). Additionally, Martin has filed a counterclaim against Coppola. Now before the Court is Cal Water's motion to dismiss the FAC and Coppola's motion to strike part of Martin's counterclaim. For the reasons that follow, both motions will be granted with leave to amend.

## BACKGROUND

From the FAC, Coppola owns the real property and the dry cleaning business, One Hour Martinizing, located at 717 West Main Street ("717 W. Main"), Visalia, California.

Since 1995, Martin has owned the real property located at 110 North Willis Street ("110 N.

Willis"), Visalia, California. 110 N. Willis currently houses office space and is located within 0.08 miles of 717 W. Main. Millers Dry Cleaners previously operated at 110 N. Willis and was owned by Defendants Harley and Cheryl Miller. Based on judicially noticed documents, Millers Dry Cleaners began operation in 1959. Millers Dry Cleaners is no longer in operation.

At 119 South Willis Street ("119 S. Willis"), Visalia, California is another dry cleaning facility, Paragon Cleaners. 119 S. Willis is located 0.1 miles from 717 W. Main.

Cal Water owns and operates public drinking water systems throughout California, including the City. Cal Water owned and operated Well CWS 02-03 ("the Well") until 2005, at which time it was abandoned by Cal Water. In 2000, however, Cal Water stopped operating the Well because of increasing levels of PCE. The Well is located 20 feet east of 717 W. Main.

On October 28, 2009, the California Department of Toxic Substances Control ("DTSC") informed Coppola that it was investigating the occurrence of tetrachloroethylene, also known as perchloroethylene ("PCE"), in the soil and groundwater at 717 W. Main. PCE is a hazardous substance. Apparently, it was later determined that the soil and groundwater both at and near 717 W. Main was contaminated with PCE.

Coppola alleges that the PCE was released due to the dry cleaning activities at 119 S. Willis and 110 N. Willis. Coppola also alleges that Cal Water's operation of the Well led to the release of PCE. Coppola seeks damages from the Defendants, including contribution and indemnification, associated with soil and groundwater contamination.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT

Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121. However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad, 709 F.3d at 761. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to

3

1  amend need not be granted if amendment would be futile or if the plaintiff has failed to cure
2  deficiencies despite repeated opportunities.  See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir.
3  2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

### I.  CAL WATER'S MOTION TO DISMISS

*Defendant's Argument*

With respect to CERCLA liability under 47 U.S.C. § 9607, Cal Water makes several arguments in favor of dismissal.  First, the FAC fails to allege that a "disposal" occurred at the Well.  Prior complaints show that Coppola is not claiming that a disposal occurred in Cal Water's pipes.  Instead, Coppola's pumping theory is that the Well's pumping drew water into the Well, which somehow pulled contaminated groundwater that was drifting in the aquifer to locations away from the Well and onto 717 N. Main.  That is, the FAC shows that the disposal of PCE occurred away from the Well, not at the Well.  Further, there are no allegations that the PCE that had been drawn into the Well was later discharged out of the Well and somehow made its way to 717 N. Main.  Second, the water that was drawn into the Well was delivered to Cal Water's distribution system for eventual supply to consumers.  The water was never discarded or disposed of into the groundwater or elsewhere.  The groundwater that was pumped by the Well was put to a productive use.  Third, and finally, the movement of contamination into a utility's well is passive migration, and the Ninth Circuit has recognized that passive migration cannot constitute a "disposal" under CERCLA.

With respect to the claim for declaratory relief under 47 U.S.C. § 9613(g)(2), this claim rises and falls with the § 9607 claim.  Because the FAC fails to state a viable § 9607 claim, Coppola's § 9613 claim for declaratory relief must also fail.

*Plaintiff's Opposition*

Coppola argues that it has properly alleged a prima facie CERCLA case, and followed the Court's analysis from the prior motion.  First, the FAC specifically alleges that Cal Water is responsible for a disposal at the Well.  Specifically, Paragraph 89 alleges that, at the Well, Cal Water knowingly pumped in groundwater at and around 717 N. Main, and Paragraph 90 alleges

4

1    that the operation of the Well constitutes a "disposal." The "disposal" at the Well further
2    exacerbated the contamination, and the associated cleanup costs. Second, Coppola argues that the
3    useful product defense does not apply. The useful product defense applies when the material in
4    question is a useful product, is not waste, and is being used as intended. As the Court held in the
5    previous motion, Cal Water does not use PCE as a component of its water, and PCE is not being
6    used as intended. Third, Coppola argues that the movement of water associated in this case is not
7    merely passive, rather it is caused by pumping activities which are the result of human conduct.
8    Because the movement was a result of human conduct, there is a "disposal."

9    With respect to declaratory relief, because the § 9607 claim is properly pled, dismissal of
10   the declaratory relief is inappropriate.

11   *Relevant Allegations*

12   The Well was installed by Cal Water in 1922. See FAC ¶ 59. The Well was installed
13   about 325 feet below the ground and created a mechanism for the release and movement of PCE in
14   the groundwater. See id. at ¶ 61. "Cal Water is the past owner and operator of the Well where
15   PCE was knowingly pumped in groundwater at and around the property." Id. at ¶ 89. Cal Water's
16   operation of the well, "including the active pumping, caused the contaminated water to be drawn
17   into the intake of the Well causing the contaminated groundwater to migrate to uncontaminated
18   areas, exacerbating the extent of the contamination plume at and around [717 N. Main]." Id. at ¶
19   64. "This conduct was caused by human conduct, which is a disposal under applicable CERCLA
20   law . . . ." Id. Prior to 2000, Cal Water tested and detected PCE in increasing concentrations. See
21   id. at ¶ 65. PCE was detected at 0.4 µg/L in 1992, at 1.0 µg/L in 1997, at 4.6 µg/L in 1999, and
22   4.9 µg/L in 2000. See id. The detection of 4.9 µg/L was found at the intake of the Well, and
23   confirms that PCE of greater than 5 µg/L was dragged into deeper, previously uncontaminated
24   groundwater. See id. Despite knowing that active pumping would release PCE and that the
25   concentrations of PCE were increasing, Cal Water failed to take reasonable precautions to prevent
26   the release of PCE from the Well. See id. at ¶ 66. Although Cal Water stopped operating the Well
27   in approximately 2000 due to the increasing levels of PCE, it did not take steps to abate the
28   existing contamination or prevent the continued migration created by the Well. See id. at 67.

Because of Cal Water's failure to take such steps, PCE released by Cal Water's pumping at the Well has migrated and continues to migrate in and around the groundwater at 717 N. Main, and exacerbated the contamination plume. See id. at ¶ 70. In 2012, samples of groundwater revealed that PCE has migrated to more than 150 feet below the ground surface, which is more than 50 feet deeper than the PCE levels that were first encountered. See id. at 71. Cal Water knowingly caused water contaminated with PCE to move into previously uncontaminated areas beneath the groundwater table and failed to take any reasonable steps to abate the contamination, which exacerbated the contamination plume. See id. at ¶ 72.

*Legal Standard*

CERCLA is a strict liability statute in that it does not require culpable conduct, and it is interpreted liberally in order to achieve the goals of cleaning up hazardous waste sites promptly and ensuring that the responsible parties pay the costs of the clean-up. Voggenthaler v. Maryland Square, LLC, 724 F.3d 1050, 1061, 1064 (9th Cir. 2013). To establish a prima facie claim for recovery of response costs under § 9607(a), a private-party plaintiff must demonstrate: (1) the site on which the hazardous substances are contained is a "facility," as defined by 47 U.S.C.§ 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of "potentially responsible parties" subject to the liability provisions of § 9607(a). City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1002-03 (9th Cir. 2010); Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 870-71 (9th Cir. 2001). A "release" is "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ." 42 U.S.C. § 9601(22). CERCLA imposes strict liability for environmental contamination upon four broad classes of "potentially responsible parties." 42 U.S.C. § 9607(a); Burlington Northern & Santa Fe Ry. v. United States, 556 U.S. 599, 608-09 (2009). One of those four categories is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2); Voggenthaler, 724 F.3d at 1064.

With respect to § 9607(a)(2), an "owner" is someone who holds title to the facility. BNSF, 643 F.3d at 679-81. An "operator" is one who "manage[s], direct[s], or conduct[s] operations specifically related to the pollution, that is, operations having to do with the leakage or disposal of the hazardous waste." United States v. Bestfoods, 524 U.S. 51, 66-67 (1998); BNSF, 643 F.3d at 680. The term "disposal" means: "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such [waste] or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 9601(29); Voggenthaler, 724 F.3d at 1064. Thus, for liability under § 9607(a)(2), "there must have been a 'discharge, deposit, injection, dumping, spilling, leaking, or placing' of contaminants [at the facility] during [the defendant's] ownership." Carson Harbor, 270 F.3d at 875; Coeur D'Alene Tribe v. Asarco, Inc., 280 F.Supp.2d 1094, 1112 (D. Idaho 2004); see 42 U.S.C. § 9607(a)(2). "Disposal" generally refers to the "affirmative act of discarding a substance as waste, and not to the productive use of the substance." Carson Harbor, 270 F.3d at 877; 3550 Stevens Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1362 (9th Cir. 1990). "Disposal" includes a defendant's "movement and spreading of contaminated soil to uncontaminated portions of property," and is not limited "to the initial introduction of hazardous material onto property." Carson Harbor, 270 F.3d at 877 (describing Kaiser Aluminum & Chem. Co. v. Catellus Dev. Corp., 976 F.2d 1338, 13420 (9th Cir. 1992)); see also United States v. CDMG Realty Co., 96 F.3d 706, 719 (3d Cir. 1996) ("'Disposal' thus includes not only the initial introduction of contaminants onto a property but also the spreading of contaminants due to subsequent activity."). In determining whether there has been a "disposal," the Ninth Circuit does not employ an "absolute binary 'active/passive' distinction," but instead requires courts to examine "each of the terms [used by § 9601(29)] in relation to the facts of the case and determine whether the movement of contaminants is, under the plain meaning of [those] terms, a 'disposal.'" Carson Harbor, 270 F.3d at 879; see Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 178 (2d Cir. 2003). Under this approach, the Ninth Circuit has found that the passive migration of contaminants through soil does not constitute a "disposal" because it does not fit within the plain meaning of § 9601(29)'s terms. Carson Harbor, 270 F.3d at 879-81. In contrast,

7

the movement of contamination that results from human conduct is a "disposal." Carson Harbor, 270 F.3d at 877; Kaiser Aluminum, 976 F.2d at 1342; Coeur D'Alene, 280 F.Supp.2d at 1112.

*Discussion*

1. 47 U.S.C. § 9607 Liability

As an initial matter, to prevail under § 9607(a), there must be a "release" or "threatened release" of hazardous substances *from a facility*. City of Colton, 614 F.3d at 1002-03; Carson Harbor, 270 F.3d 870; 3550 Stephens Creek, 915 F.2d at 1358. A plaintiff need not allege the precise manner in which a "release" has occurred. See Ascorn Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1153-54 (9th Cir. 1989). Here, contrary to Cal Water's motion, the FAC alleges in part that Cal Water "failed to take reasonable precautions to prevent *the release of PCE from [the Well]*." Id. at ¶ 66. Given this allegation, and because the particular manner of "release" need not be pled, the FAC has adequately alleged a "release" from the Well.

As for Cal Water's other arguments, Coppola is correct that the Court has addressed and rejected many of Cal Water's arguments in the previous motion to dismiss. See Coppola v. Smith, 935 F.Supp.2d 993 (E.D. Cal. 2013). In the prior motion to dismiss, Cal Water argued that it could not be liable as a "past owner or operator" because: (1) any disposal that occurred at the Well constituted passive migration; (2) disposal does not include productive water use; (3) disposal does not include the extraction of contaminated water at the direction of a regulatory agency; and (4) Cal Water was not an operator because its operations were not for the purpose of managing contaminants in groundwater. See Doc. No. 78 at 6-9. In addressing these arguments, the Court held in relevant part that Cal Water had not established the applicability of the "useful product defense" and that the allegation of "operations" and the opposition's reference to "pumping" did not indicate purely passive migration. See Coppola, 935 F.Supp.2d at 1023-24. With respect to "pumping," the Court explained:

> In their opposition, Coppola explains that Cal Water pumped contaminated water and that the pumping process caused the spreading and movement of contaminated water. This explanation identifies the nature of the operation and identifies activity that appears to be beyond a natural and passive movement. The explanation suggests that the contaminated water moved to uncontaminated areas because of the pumping process, not because of the Well's mere presence or the water's natural tendency to flow. Stated differently, the explanation indicates a movement of

8

> contamination by human conduct, which is a "disposal." Nevertheless, Coppola's explanation is not part of the TAC and it is not enough to prevent dismissal. The explanation does, however, indicate that amendment would not be futile at this time.
>
> The Court is not convinced by Cal Water's arguments that amendment should not be permitted. First, Cal Water spends much of its briefing arguing that only passive migration occurred at or through the Well. However, it is not clear from the TAC or the opposition that only passive migration occurred at the Well. To be sure there is ambiguity in the TAC, but the opposition indicates movement from human conduct because the contamination moved as part of Cal Water's pumping process. Cal Water has not cited any authority that holds that water that moves in the pumping process constitutes passive migration. The Court knows little of the operation of utility wells, much less about the operation of this particular Well. As the case develops, the evidence may show only passive migration, which would defeat liability under § 9607(a)(2). For now, the only information before the Court does not indicate mere passive migration.

Id. (citations and footnote omitted).

When the Court resolved Cal Water's first motion to dismiss, it did not address whether there was a "'disposal' at the Well." When the Court was addressing the pumping operations of the Well, it did so in the context of trying to determine whether the movement of PCE-contaminated water was purely passive migration. The Court did not intend to hold that allegations concerning pumping would insulate Coppola's cause of action from any further motions. Rather, the Court was holding that Cal Water's "passive migration" theory would not justify a Rule 12(b)(6) dismissal. Cal Water's argument that there was no disposal "at the Well" was not sufficiently part of the first motion. Although Cal Water did make a similar argument as part of its reply brief, Coppola did not have a chance to respond to that argument. Moreover, Cal Water's reply argument was not based on factual allegations in the complaint, and was made based on assumptions and characterizations that were not clearly true or accurate. Now that additional factual allegations have been made, and Cal Water has raised the issue as part of its Rule 12(b)(6) memorandum, the issue of a "'disposal' at the Well" is properly before the Court.

The plain language of § 9607(a)(2) requires a disposal "at a facility." As quoted above, that section identifies one potentially responsible party as "any person who at the time of disposal of any hazardous substance owned or operated any *facility at which* such hazardous substances *were disposed of.*" 42 U.S.C. § 9607(a)(2) (emphasis added). In *Carson Harbor*, the Ninth Circuit stated that "CERCLA generally imposes strict liability on owners and operators of

9

*facilities at which* hazardous substances were disposed." Carson Harbor, 270 F.3d at 870 (emphasis added). Further, *Carson Harbor* involved the issue of whether a past owner of property could be liable for contamination found on the property by the current owner. See id. at 868-69. The Ninth Circuit explained that for the past owner to fit the definition of § 9607(a)(2), "there must have been a 'discharge, deposit, injection, dumping, spilling, leaking or placing' of contaminants *on the property* during their ownership." Id. at 875 (emphasis added). Because there was purely passive soil migration that did not fit within § 9601(29)'s definition of "disposal," there was not a "disposal," and the prior owners could not be liable under § 9607(a)(2). See id. at 879-80.

Based on *Carson Harbor* and the plain language of § 9607(a)(2), Coppola must allege facts that show a "disposal" occurred "at the Well" during Cal Water's ownership or operation of the Well. That is, Coppola must allege that Cal Water discharged, deposited, injected, dumped, spilled, leaked, or placed PCE at or into the Well, such that the PCE at or in the Well could enter the environment. Further, given the nature of the term "disposal," there must be some indication that the PCE or the water containing the PCE was discarded by Cal Water. See 3550 Stephens Creek, 915 F.2d at 1362; see also Carson Harbor, 270 F.3d at 877.

Here, the FAC alleges that the operation of the Well constituted a "disposal." See Complaint at ¶ 90. However, the act of "operating" does not constitute a disposal unless the "operation" involves conduct that fits within the definition of "disposal" under § 9601(29).[1] Cf.

---

[1] The Court again emphasizes that its discussion of "operation" and "pumping" was meant to address the argument that only passive movement was occurring. The Court was not holding that any human conduct that results in the movement of a hazardous substance is a "disposal." *Carson Harbor*'s approach to "disposals" under § 9607(a)(2) was to adopt a plain meaning and fact based approach in order to determine whether an activity fits within § 9601(29)'s definition. See Carson Harbor, 270 F.3d at 877. In addressing the "active/passive" approach to "disposal" that some courts had adopted, *Carson Harbor* cited *Kaiser Aluminum*. The Ninth Circuit characterized *Kaiser Aluminum* as meaning that "the movement of contamination that does result from human conduct is a "disposal," and then parenthetically described *Kaiser Aluminum* as "holding that a 'disposal' under § 9607(a)(2) includes a party's movement and spreading of contaminated soil to uncontaminated portions of property and that 'Congress did not limit 'disposal' to the initial introduction of hazardous material onto property.'" Carson Harbor, 270 F.3d at 877. In *Kaiser Aluminum*, excavations were occurring on a property, and excavated soil that contained contaminants was moved away from the excavation site and then spread over uncontaminated sections of the property. See Kaiser Aluminum, 976 F.2d at 1342. The subsequent movement was human caused, and the movement was done as a means of discarding the excavated dirt. It appears that the spreading of the soil could be classified as dumping, placing, or depositing, which are methods of "disposal" under § 9601(29). From *Carson Harbor* and *Kaiser Aluminum*, the human movement of a hazardous substance must still fit within § 9601(29)'s definition of "disposal."

Carson Harbor, 270 F.3d at 879. The Complaint further alleges that contaminated groundwater was drawn into the intake of the Well. See FAC at ¶ 64. It is not clear that drawing contaminated water into the Well fits within one of the seven methods of "disposal" identified under § 9601(29), and Coppola has not argued the point. Assuming without deciding that drawing the PCE contaminated water into the Well could be construed as "placing" PCE at/into the Well, there are still concerns. The drawing-in of PCE-contaminated water at/into the Well does not by itself indicate that some act of discarding was occurring. The allegations do not suggest that the contaminated water was drawn into the Well as part of a method of discarding either PCE specifically or the contaminated water in general. To the contrary, the FAC alleges that the Well was a drinking water supply well, which suggests that the discarding of hazardous substances was not occurring,[2] at least intentionally.[3] Further, there are no allegations that discuss what happened to the contaminated water once it was drawn into the Well. It is possible that once the contaminated water was drawn into the Well's intake that a disposal *at the Well* subsequently occurred. For example if the contaminated water somehow leaked out of the Well or was forcibly discharged out of the Well itself during pumping operations, such activity would likely fit within the definition of "disposal" and indicate an act of discarding. However, without allegations that suggest either the drawing-in of contaminated water was an act of discarding that fits a method of disposing under § 9601(29), or that the drawn-in contaminated water was subsequently "disposed" of as part of an act of discarding, the FAC does not adequately show a "'disposal' at the Well." Dismissal of this cause of action is appropriate.

With respect to Cal Water's argument regarding the "useful product defense," Cal Water's characterization of the Court's order is correct. When the Court held that Cal Water had not established the applicability of the defense, it did so based on the allegations in the Complaint and the arguments made. See Coppola, 935 F.Supp.2d at 1024. The Court was not holding that Cal Water could not again rely on the useful product defense. Here, without additional allegations, the

---

[2] Cal Water argues that the water that was pumped into the Well then went for further treatment before being piped to consumers. See Doc. No. 123 at 10:9-11. Although the FAC does not make these allegations, this contention is consistent with Coppola's recognition that the Well was a drinking water supply well.

[3] "Spilling" or "leaking" are methods of disposal that could occur unintentionally.

11

1  Court again is not convinced that the PCE was a "useful product" to Cal Water, especially since
2  Cal Water's opposition suggests that additional refinement/purification of the PCE-containing
3  water occurred before delivery to consumers. See Doc. No. 123 at 10:9-11. That being said, to
4  the extent that Cal Water is maintaining that the PCE-contaminated water was in no way discarded
5  at the Well, as discussed above the Court has found merit to this argument.

6  With respect to the argument that any PCE-contaminated water that entered the Well was
7  from purely passive migration, the Court again disagrees. The allegations in the FAC indicate
8  some kind of water movement as a result of pumping, and there are no allegations that indicate
9  purely passive movement. Pumping is clearly human conduct. See Carson Harbor, 270 F.3d at
10  877. For the same reasons that the Court rejected this argument in the prior motion, the Court
11  again rejects it in this motion. See Coppola, 935 F.Supp.2d at 1023-24.

12  Cal Water requests that the Court dismiss the claims against it with prejudice. Part of the
13  basis of this request appears to be an assumption that the Court understands how the Well operated
14  and worked. As it has previously stated, the Court does not have a sufficient understanding of
15  how the Well functioned. Additional evidence, which generally is not proper in a Rule 12(b)(6)
16  motion, is necessary to give Cal Water's arguments more force.

17  Another basis for dismissal with prejudice appears to be that Coppola has conceded that its
18  theory is not based on the water in the pipes, and that the force of pumping caused PCE-
19  contaminated water to migrate to Coppola's property even though that PCE-contaminated water
20  never entered the Well. With respect to the alleged concession concerning "water in the pipes," in
21  the opposition to the first motion to dismiss, Coppola argued that *Vernon Village, Inc. v. Gottier*,
22  755 F.Supp. 1142 (D. Conn. 1990) did not apply because unlike *Vernon Village*, this case is not
23  based on the supply of drinking water to consumers. In distinguishing *Vernon Village*, Coppola
24  stated that their claims were not based on water in Cal Water's pipes. See Doc. No. 101 at 10:11-
25  12. Coppola did not state that their claims were based on contaminated water that had not been in
26  the Well. Neither the context nor the substance of the "concession" convince the Court that
27  amendment would be futile. As to the argument that Coppola is trying to recover based on PCE-
28  contaminated water that was never at or inside of the Well, this argument is more troubling. If the

1 PCE that caused Coppola to expend funds was never at/inside of the Well, then it is difficult for
2 the Court to see how there could be either a disposal *at the Well* or a release of PCE *from the Well*.
3 Nevertheless, given the Court's limited knowledge of the operation of wells, the Court will grant
4 Coppola leave to amend.

       2.       Second Cause of Action -- 47 U.S.C. § 9613 Declaratory Relief

A claim for declaratory relief under 47 U.S.C. § 9613(g)(2) is dependent upon a valid 47 U.S.C. § 9607 claim. See Chevron Envl. Mgmt. Co. v. BKK Corp., 880 F.Supp.2d 1083, 1091 (E.D. Cal. 2012); Union Station Assocs., LLC v. Puget Sound Energy, Inc., 238 F.Supp.2d 1226, 1230 (W.D. Wash. 2002). Because Coppola's § 9607(a) claim will be dismissed, Coppola's § 9613 claim against Cal Water will also be dismissed with leave to amend. See id.

       3.       Tenth Cause of Action – Declaratory Relief

Cal Water has moved to dismiss all the claims alleged against it. See Doc. No. 123 at 1:5-7. Cal Water focuses on the CERCLA claims of the first and second causes of action, but did not specifically mention the tenth cause of action. Coppola did not address the tenth cause of action in their opposition, but did include it in a proposed order that would have denied Cal Water's motion. See Doc. No. 132-2. The tenth cause of action is alleged against "All Defendants," and is for declaratory relief regarding responsibility for the damages claimed by Coppola. In the Court's prior order, it dismissed the declaratory relief cause of action because it was derivative of the other claims alleged against Cal Water. See Coppola, 935 F.Supp.2d at 1035. In light of the Court's prior ruling and Coppola's proposed order, the Court will treat the tenth cause of action as a derivative claim and dismiss it with leave to amend.

## II.    COPPOLA'S MOTION TO STRKE[4]

*Counterclaim Defendants' Argument*

Coppola argues that claims of malice, oppression, and fraud require specific pleading.

---

[4] Coppola brings a Rule 12(f) motion to strike Martin's request for punitive damages. However, the basis of the argument is that Martin's allegations do not adequately support a claim for punitive damages. Such an argument is essentially that the Martin's counterclaim fails to state a claim, which implicates Rule 12(b)(6) and not Rule 12(f). Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010). Accordingly, the Court will treat Coppola's motion as Rule 12(b)(6) motion to dismiss and not as a Rule 12(f) motion to strike. See id.

13

1  There are no allegations that describe the appropriate mental state for punitive damages. Martin
2  has not alleged willful, oppressive, or malicious conduct. At most, Martin alleges that Coppola
3  was negligent. Martin cannot allege the requisite mental state because it is undisputed that once
4  Coppola learned of the contamination, steps were taken to clean up the PCE. Further, there are no
5  allegations that Martin was in possession of 110 N. Willis at the time of any releases of PCE by
6  Coppola. Thus, dismissal of the punitive damages request is appropriate.

*Counterclaim Plaintiff's Opposition*

8  Martin argues that the Federal Rules of Civil Procedure set the applicable pleading
9  standard, and that under Rule 9(b), conclusory allegations are sufficient. Here, the counterclaim
10 adequately alleges that Coppola acted with full knowledge of the consequences and damages
11 being caused to Martin and that Coppola's conduct was willful, oppressive, and malicious.

*Discussion*

13 As an initial matter, Coppola's reliance on California Civil Code § 3294 to set the pleading
14 standard is misplaced. Section 3294 sets the substantive requirements that must be met in order to
15 obtain punitive damages, but Federal Rules of Civil Procedure 8 and 9 sets the pleading standards
16 that must be met in federal court. See Neveau v. City of Fresno, 392 F.Supp.2d 1159, 1183-84;
17 Clark v. Allstate Ins. Co., 106 F.Supp.2d 1016, 1018-19 (S.D. Cal. 2000). Federal Rule of Civil
18 Procedure 9(b) provides in part that "Malice, intent, knowledge, and other conditions of a person's
19 mind may be alleged generally." Fed. R. Civ. Pro. 9(b); Neveau, 392 F.Supp.2d at 1184.
20 Although malice, intent, and knowledge may generally be alleged, the allegations that request
21 punitive damages must still meet the standards elaborated under *Iqbal* and *Twombly*. See
22 Mayfield v. NASCAR, 674 F.3d 369, 377 (4th Cir. 2012) ("Rule 9(b) ensures there is no
23 heightened pleading standard for malice, but malice must still be alleged in accordance with Rule
24 8 – a 'plausible' claim for relief must be articulated."); Kelley v. Corrections Corp. of Am., 750
25 F.Supp.2d 1132, 1147 (E.D. Cal. 2010).
26 Here, Martin prays for punitive damages under its claims for nuisance (fifth cause of
27 action) and trespass (sixth cause of action). Under both of these causes of action, Martin alleges
28 that Coppola's operation of a dry cleaning business caused the release of hazardous substances,

14

including PCE, into the subsurface at and around 717 W. Main, and that the hazardous substances have spread to surrounding properties including 110 N. Willis. See Doc. No. 121 at Counterclaim ¶¶ 35, 41. Martin also alleges that it is informed and believes that Coppola's acts were performed with full knowledge of the consequences and damages being caused to Martin, and that Coppola's conduct was willful, oppressive, and malicious. See id. at ¶¶ 39, 44.

These allegations do not plausibly support punitive damages. While Martin may properly allege that conduct was malicious, the nature of the releases by Coppola is not described. Simply because a release occurs does not mean that the release was done with an evil motive. What is alleged is merely a claim for trespass and nuisance, and such claims in and of themselves do not automatically entail a right to punitive damages. Something more is necessary to plausibly support an evil motive behind Coppola's actions. Dismissal of the punitive damages requests is appropriate. See Mayfield, 674 F.3d at 377; Kelley, 750 F.Supp.2d at 1147-48. Because it is not clear that amendment would be futile, dismissal will be with leave to amend.[5]

## CONCLUSION

With respect to Cal Water's motion, Cal Water has moved to dismiss each claim against it. As discussed above, the FAC does not adequately allege that a "disposal" of PCE occurred "at the Well." Without a "disposal at the Well," Cal Water is not liable under § 9607(a)(2). Dismissal of the first cause of action is appropriate. Further, without a viable claim under § 9607, there can be no relief under § 9613. Dismissal of the second cause of action is appropriate. Finally, because the tenth cause of action appears to be derivative of the first cause of action, dismissal of the tenth cause of action is appropriate. Contrary to Cal Water's arguments, it is not clear at this point that amendment would be futile. Therefore, dismissal of the first, second, and tenth causes of action will be with leave to amend.

---

[5] Given the relatively early stages of this litigation, Martin may not be in possession of sufficient facts to plausibly allege a claim for punitive damages. Because the nature of any releases by Coppola, i.e. how the releases occurred, would be discoverable based on the causes of action alleged in the counterclaim, it may be that Martin will discover additional facts that would support a claim for punitive damages. If Martin chooses not to file an amended counterclaim at this time, but later obtains facts that would support a plausible claim, Martin may file a Rule 15 motion to amend.

With respect to Coppola's motion, Coppola seeks to dismiss Martin's request for punitive damages. Although heightened specificity is not required to properly allege punitive damages, the request must still be plausible. Because the allegations do not plausibly demonstrate an evil motive or that punitive damages are justified, dismissal is appropriate. However, because it is not clear that amendment would be futile, dismissal will be with leave to amend.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Cal Water's motion to dismiss is GRANTED and Coppola's first, second, and tenth causes of action against Cal Water are DISMISSED with leave to amend;

2. Coppola's motion to dismiss is GRANTED and Martin's request for punitive damages is DISMISSED with leave to amend;

3. Coppola and Martin may file an amended complaint and an amended counterclaim, respectively, within twenty-one (21) days of service of this order;

4. If Coppola fails to file a timely amended complaint, then leave to amend will be withdrawn and Cal Water will be terminated from this action without further notice; and

5. If Martin fails to file a timely amended counterclaim, then Coppola shall file a response to the counterclaim within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated: November 8, 2013

SENIOR DISTRICT JUDGE