UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA COPPOLA, GARY COPPOLA, and THE TRUST OF ANTHONY M. COPPOLA,<br><br>　　　Plaintiff,<br><br>v.<br><br>GREGORY SMITH, an individual; RICHARD LASTER, an individual; and THE JANE HIGGINS NASH TRUST; JANE NASH AS EXECUTOR OF THE ESTATE OF DECATUR HIGGINS, HARLEY MILLER, an individual; CHERYL MILLER, an individual; MARTIN AND MARTIN PROPERTIES, BENART MAIN STREET PROPERTIES, CAL WATER SERVICE COMPANY, the CITY OF VISALIA and DOES 1-20, inclusive,<br><br>　　　Defendants. | Case No.: 1:11-cv1257-AWI-BAM<br><br>**ORDER ON THE PARTIES' CROSS MOTIONS TO COMPEL**<br><br>**(Doc. 256)** |
| RELATED CROSS AND COUNTER-CLAIMS | |

## I.　INTRODUCTION

Plaintiffs Gary Coppola, the Trust of Anthony M. Coppola, and the Viola M. Coppola Irrevocable Trust (collectively "Coppola") and Defendant Cal Water bring cross motions to compel in this CERCLA groundwater contamination action. The Motions were heard on March 20, 2015, at 2:00 PM, before United States Magistrate Judge Barbara A. McAuliffe. Counsel Jan Greben and Brett Boon appeared in person on behalf of Plaintiffs. Counsel Patrick Schoenberg appeared in person and Counsel

Noah Perch-Ahern appeared by telephone on behalf of Defendant Cal-Water. Having considered the joint statement of the parties, argument presented at the hearing, as well as the Court's file, Plaintiffs' Motion to Compel is DENIED in PART and GRANTED in PART. Cal-Water's Motion to Compel is DENIED.

## II. BACKGROUND

### A. Factual Background

The underlying CERCLA action arises from the chemical contamination of property surrounding a dry cleaning business in Visalia, California. Plaintiffs are owners and operators of a dry cleaning facility, commonly known as One Hour Martinizing, located at 717 West Main Street, Visalia, California 93291. The United States Environmental Protection Agency (EPA) and California Department of Toxic Substances Control (DTSC) found that Plaintiffs "are a responsible party" for the release of Tetrachloroethylene ("PCE") from Plaintiffs' Property to surrounding soil and groundwater because Plaintiffs have "been using PCE since at least 1994" and "are the current owners and operator of a facility that overlies a plume of PCE contamination." (DTSC Order, p. 2). DTSC ordered Plaintiffs to investigate and remediate the contamination caused by their dry cleaning operations.[1]

Defendant Cal Water owns and operates public drinking water systems throughout California and the City of Visalia. At the time relevant to this action, Cal Water owned and operated well CWS 02-03 ("CWS 02-03"), a well located 20 feet east of Plaintiffs' Property. In 2000, Cal Water stopped operating CWS 02-03 because of increasing levels of PCE contamination.

In the operative sixth amended complaint, Coppola alleges that Cal Water's operation of CWS 02-03 led to the increased release and spread of PCE contamination. Coppola seeks damages from all Defendants, including contribution and indemnification, associated with soil and groundwater contamination.

### B. Procedural Background

As stated above, Plaintiffs are alleged to be partly responsible for a PCE plume in the vicinity of their property. Plaintiffs brought suit against Cal Water alleging that Cal Water contributed to the spread of PCE contamination through the operation of CWS 02-03. *See* Sixth Amended Complaint, p.

---

[1] Other defendants in this action own or did own dry cleaning facilities or property where dry cleaning facilities operated in the vicinity of the contamination.

10:23. That claim was subject to several motions to dismiss which narrowed the actionable legal theory upon which Plaintiffs may proceed against Cal-Water.[2] District Judge Anthony W. Ishii issued an Order on Cal Water's Motion to Dismiss the Fifth Amended Complaint on May 14, 2014. (Doc. 214). That Order dismissed Plaintiffs' CERCLA "transporter claim" under Section 9607(a)(4) and its "pumping theory" claim under Section 9607(a)(2). The District Court however refused to dismiss Plaintiff's claim subjecting Cal Water to liability as a "prior owner or operator" as follows:

> With this reading of Paragraph 69, and construing the factual allegations in the light most favorable to Coppola, the Court is satisfied that Coppola has alleged a violation of § 9607(a)(2). The allegations show that PCE contaminated water entered the Well during the pumping process. When the pumps stopped, PCE-contaminated water then exited through the Well openings. It is not entirely clear how the PCE-contaminated water exited the Well. However, given the definition of the term "disposal," it is reasonably inferred that the PCE-contaminated water either "leaked" out of the Well openings or was "discharged" out of the Well openings. See 42 U.S.C. § 9601(29); cf. Carson Harbor, 270 F.3d at 879. Therefore, the allegations indicate that a "disposal" occurred "at the Well."

(Doc. 214, p. 14:16-24) (internal citations omitted)

Based on this ruling, the primary remaining claim against Cal Water is related to water that entered and exited CWS 02-04.

Formal discovery is not yet open in this case as the parties have not participated in a Rule 26 Scheduling Conference. In an informal discovery conference on November 20, 2013, Plaintiffs expressed a need to conduct limited early discovery prior to the parties' Rule 26 (f) discovery conference. The Court agreed to allow early discovery if the parties stipulated to an agreed discovery plan. On January 3, 2014, the Court issued a Modified Stipulated Scheduling Order between Plaintiffs, Cal-Water, and the other defendants setting forth the parameters of early discovery in this case including written discovery, depositions, and investigatory field work. (Doc. 192).

The parties filed their joint discovery dispute on January 30, 2015. (Doc. 256). The Court continued the hearing to allow the resolution of a related state court motion and oral argument occurred on March 20, 2015. (Doc 259). Primarily at issue in Plaintiffs' Motion to Compel is the appropriate geographic scope of discovery in this matter. Plaintiffs' seek information pertaining to Cal Water's patterns and practices relative to its groundwater wells throughout the City of Visalia and at surface property surrounding CWS 02-03. Cal Water's competing Motion to Compel seeks responses to several

---

[2] This Court will not address the District Court's Order Dismissing certain claims against Defendant Cal-Water in detail, but only the aspects relevant to the parties' discovery issue. For a more complete procedural background dismissal orders see generally, Docs. (119, 147, 214).

interrogatories regarding the amount of PCE that entered into and was released from CWS 02-03, as well as requests for admissions related to whether Plaintiffs are a source of PCE contamination with a legal right to control tenant dry cleaning operations on their property.

### III.   LEGAL STANDARDS

The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. As the Supreme Court reiterated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." 437 U.S. at 351 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

The party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1). *Reece v. Basi*, 2014 U.S. Dist. LEXIS 78307, 2014 WL 2565986, at *2 (E.D. Cal. 2014) (Claire, M.J.). Following that showing (or if relevance is plain from the face of the request), the party who resists discovery then has the burden to show that discovery should not be allowed, and carries the "heavy burden of clarifying, explaining, and supporting its objections." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### IV.   DISCUSSION

**A.   Plaintiffs' Motion to Compel**

Plaintiffs' claims against Cal-Water are based on Cal-Water's ownership and maintenance of Cal Water's Supply Well CWS 02-03. Plaintiffs move to compel written discovery related to: (1) all water wells owned by Cal-Water within the City of Visalia; (2) the property owned by Cal Water surrounding CWS 02-03, and (3) all documents related to Cal Water's PCE litigation from a separate action pending in the San Mateo County Superior Court.[3] Cal-Water refuses to produce discovery of

---

[3] In their motion to compel, Plaintiffs also argue that Cal Water initially refused to produce documents related to CWS 02-03. At oral argument, Cal Water explained that prior to the motion to compel hearing it intentionally withheld roughly 22,000 documents directly related to CWS 02-03. Although relevant discovery, Cal Water refused to produce these admittedly relevant documents until a dispute involving a protective order in the Dow state court litigation was resolved. At the instant hearing, Cal Water indicated that the underlying protective order issue was resolved and the previously withheld

any material that exceeds the scope of the single well CWS 02-03 as irrelevant.

### 1. Document Requests – Wells Within the City of Visalia - Set One (Nos. 59, 60, 69, 79, 83-85, 89-107, 109-111, 113-128, 131-136, 138-142).

Coppola seeks documents relative to various aspects of Cal Water's groundwater well siting, construction, operation, maintenance, repair, abandonment, testing, and related environmental concerns for all of Cal Water's wells within the City of Visalia.[4] According to Coppola, Cal Water's "patterns and practices" within the City of Visalia are relevant to Coppola's claims, defenses, and Cal Water's liability allocation. Coppola further argues that Cal Water's patterns and practices will establish that despite Cal Water's knowledge that its wells were exacerbating the contamination plume; Cal Water failed to take reasonable measures to preclude further spread of contamination. Finally, Plaintiffs argue that their allegations cannot be contained to CWS 02-03 as Plaintiffs may assert allegations pertaining to other wells against Cal-Water at a later date.

Cal Water refuses to produce any discovery that does not specifically relate to well CWS-02-03 as irrelevant. According to Cal-Water, the District Court granted Cal-Water's Motion to Dismiss in part thereby limiting Coppola's claims against Cal Water to those relating specifically to CWS 02-03. Cal-Water contends that there is an absence of good cause for production of any documents regarding its other well locations within the City of Visalia.

#### i. Analysis

The Court agrees with Cal-Water that based on the circumstances of this case, the geographic scope of Coppola's discovery requests are overbroad and should be contained to the theory of liability defined by the pleadings and the Court's prior Orders of dismissal.

The scope of discovery is broad but it is not without limits, *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014), and the Court is vested with broad discretion to manage discovery, *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam), *cert. denied*,

---

documents related to CWS 02-03 were forthcoming. Plaintiffs' motion to compel the CWS 02-03 documents is therefore DENIED as MOOT.

[4] Cal Water initially argued that Coppola has been unclear as to the geographic limitation; some discovery requests relate strictly to the well and the well property, others are within 2000 feet of the well, the well system within the City of Visalia, or no geographic restriction at all. However, Coppola states that after significant meet and confer efforts, Coppola has "geographically limited [their requests] to wells within Visalia." (Doc. 256 at 3).

134 S. Ct. 117; *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005*); Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.*

Cal-Water's argument that Plaintiffs' discovery requests are overly broad based on the District Court's limitation is well taken. The District Court's dismissal order narrowed the potential source of liability against Cal-Water to PCE contaminated water that "entered" and was then "released" from CWS 02-03 into a previously uncontaminated location under Section 9607(a)(2)'s "former owner/operator theory." (Doc. 214 at 14:7-10). Plaintiffs are therefore limited to recovery against Cal Water in this action based upon the remaining claim that the contamination introduced into the water table was spread by the intake and release of water from CWS 02-03.

Although not cited in Plaintiffs' briefing, Plaintiffs argued at the hearing that discovery related to all of Cal Water's wells within the City of Visalia correlates with the Gore factors.[5] Generally, in allocating response costs among liable parties in a contribution case, a court may consider equitable "Gore factors" as the court determines are appropriate. Coppola argues the Gore factors allow a Court to consider general pattern and practices with respect to contamination. These factors, however, are neither mandatory nor exclusive. *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) (district court has "discretion to decide what factors ought to be considered" in contribution scheme).

The Court is particularly concerned with the limited scope of Cal Water's potential liability, i.e., CWS 02-03. CERCLA is a strict liability statute in that it does not require culpable conduct, and it is

---

[5] The "Gore factors," so named as part of a 1980 House Superfund Bill sponsored by then-congressman Albert Gore, include (1) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished, (2) the amount of the hazardous waste involved, (3) the degree of toxicity of the hazardous waste involved, (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste, (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste, and (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment. *Kerr-McGee Chemical Corporation v. Lefton Iron & Metal Company*, 14 F.3d 321, 326 & n. 4 (7th Cir. 1994) (listing equitable factors courts may consider, including so-called "Gore factors").; *see also Norfolk S. Ry. Co. v. Gee Co.*, 2002 U.S. Dist. LEXIS 18980, 2002 WL 31163777, at *32 & n. 28 (N.D. Ill. September 30, 2002).

interpreted liberally in order to achieve the goals of cleaning up hazardous waste sites promptly and ensuring that the responsible parties pay the costs of the clean-up. *Voggenthaler v. Maryland Square, LLC*, 724 F.3d 1050, 1061, 1064 (9th Cir. 2013). Section 9607(a)(2) imposes liability on those who owned or operated a facility at the time of a disposal, regardless of intent. *See, e.g., Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 881 (9th Cir. 2001).

Plaintiffs' current allegations involve claims of Cal Water's ownership and operation of CWS 02-03, a well located 20 feet from Plaintiffs' property. Pattern and practice information unrelated to CWS 02-03 lacks relevancy to Plaintiffs' current claims even in spite of Coppola's argument concerning the Gore factors. The focus of discovery is Cal Water's potential liability. Extending the scope of discovery to include all wells owned by Cal-Water in the City of Visalia would give Plaintiffs a license to embark on a fishing expedition. In light of the limited nature of Cal-Water's liability in this case and the multiple dismissal orders narrowing the scope of Cal-Water's liability to CWS 02-03, the Court DENIES Plaintiffs' Motion to Compel discovery related to all of Cal-Water's wells within the City of Visalia.

### 2. Cal Water's Surrounding Property (Set one) (Nos. 28-30, 61, 64-66, 71)

Coppola moves to compel discovery related to any environmental testing, environmental assessments, regulatory orders, and environmental investigations conducted on the Cal Water owned property immediately surrounding CWS 02-03 ("CWS Property"). Coppola argues this discovery is relevant to defend against Cal Water's counterclaim which alleges that Coppola "caused the spread of contaminants to surrounding properties, including but not limited to the [CWS] property." Counterclaim ¶ 10. Coppola also requests this information to establish whether Cal-Water knew that CWS 02-03 was contributing to the contamination plume and the extent of contribution. Cal Water objects that this information is irrelevant because it seeks information beyond the confines of CWS 02-03.

Rule 26 states that information is discoverable if relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Cal Water's counterclaim specifically alleges that Coppola has caused spread of contaminants "to surrounding properties, including but not limited to the [CWS] Property." The Court agrees with Plaintiffs that this information is relevant under 26(b) and in light of Cal-Water's counterclaim. *See United States v. Shaw*, No. 04-2503 RDR, 2005 U.S. Dist. LEXIS 32648, 2005 WL

3418497, at * 1 (D. Kan. 2005) (stating that "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party"). Thus, Coppola is entitled to information pertaining to the CWS Property to defend against Cal Water's counter claims. Plaintiffs' Motion to Compel discovery responses pertaining to the CWS Property surrounding CWS 02-03 is GRANTED.

### 3.   Cal Water's Concurrent PCE Litigation - Set Two (Nos. 143-146)

In their third issue, Coppola moves to compel discovery from a state court action initiated by Cal Water. Coppola explains that Cal Water is a Plaintiff in related litigation in the San Mateo County Superior Court entitled *Cal Water v. Dow, et al.* (Dow Litigation), in which Cal Water asserted claims against companies that make PCE, manufacture dry cleaner equipment, and chemical suppliers. In the *Dow* litigation, Cal Water alleges that dry cleaners have released PCE, which damaged Cal Water's supply wells. Coppola argues this discovery is relevant to the instant matter because the *Dow* litigation involves allegations of PCE contamination as well as Coppola's dry cleaners, other named dry cleaners in this litigation, and Cal Water's wells. Plaintiffs further argue that Cal Water already has this information within its possession which minimizes the burden of production. Cal Water objects to production of the Dow litigation file because those documents relate to claims or defenses in the *Dow* matter, not the instant matter. (Doc. 256 at 11).

As addressed above, FRCP 26(b)(1) allows discovery of any matter that is relevant to any party's claim and defense and non-privileged. Fed. R. Civ. P. 26(b)(1). Plaintiffs' wholesale discovery request of Cal Water's state court file is unrelated to the subject matter of this litigation—CWS 02-03. These requests seek the production of an entire litigation file from a State court action in which Cal Water sought to recover for property damage to its facilities throughout the State of California. The genesis of Plaintiffs' claims against Cal Water as ordered by Judge Ishii is confined to CWS 02-03. The *Dow* litigation, which far exceeds the scope of CWS 02-03, involves more than twenty parties, and over five years of litigation involving allegations that are unrelated to the instant matter. In short, Plaintiffs have not met their burden to establish that this wide breadth of information is reasonably calculated to lead to the discovery of admissible evidence in this matter. Plaintiffs' Motion to Compel Cal Water's entire Dow litigation file is DENIED.

**B.     Cal Water's Motion to Compel**

On July 31, 2014, Cal Water propounded various written discovery on Plaintiffs. After providing initial responses, Plaintiffs provided supplemental discovery responses which Cal Water argues are insufficient. Generally, Cal Water moves to compel responses to several interrogatories regarding the amount of PCE that entered into and was released from Well 02-03, as well as requests for admissions related to whether Plaintiffs are a source of PCE contamination with a legal right to control tenant dry cleaning operations on their property.

**1.     Interrogatories (Nos. 3-8) – PCE Amounts and Calculations**

Cal Water moves to compel complete responses to interrogatories Nos. 3 to 8 which seeks information supporting Plaintiffs' contention that water containing PCE was taken in and then released from Well 02-3 (Rog. No. 3), the total amount of such water and the amount of PCE involved (Rog. Nos. 4, 5), the methodology used to determine these amounts (Rog. Nos. 6, 7), and the sources of the PCE. (Rog No. 8). Without producing a privilege log, Coppola objects that all documents, test results, and information supporting their claim is protected as work product of their (expert) consultants. Cal Water's response is two-fold: first, Cal Water seeks existing data (such as test results) and not reports made specifically for litigation. Second, Cal Water argues that pursuant to Federal Rule of Civil Procedure 26(b)(4)(D), a nontestfying expert's information is discoverable under the doctrine of unfairness. Cal Water argues that this suit is based on land conditions from 15 years ago and therefore it is impossible for Cal Water to conduct independent testing of these locations. According to Cal Water, it is unfair for Plaintiffs' to withhold information that Cal Water cannot obtain through other methods.

Federal Rule of Civil Procedure Rule 26 controls expert disclosures, reports, and expert discovery generally. Expert opinions are protected by the work product doctrine, which extends to litigation consultants and retained experts. Fed. R. Civ. P. 26(b)(3)(A)). The Federal Civil Procedure Rutter Guide, states "distinctions between work product and non-work product material often can be made by focusing on whether the information or document is derivative of the attorneys (or their agents) work as compared with nonderviative information. *See* WILLIAM SCHWARZER, ET AL., CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL at § 11:866 (The Rutter Guide 2012).

At the outset, the Court notes that the questions call for expert testimony. The questions do not call for information within Plaintiffs' personal knowledge, or reasonably obtainable, outside of obtaining an expert. Fed.R.Evid. 602. Any expert interpretation is undiscoverable at this time as protected by the attorney-client work product doctrine. The investigation surrounding the source of the PCE contamination is ongoing, and as a result, Coppola's experts cannot develop opinions or methodologies until the data collection is complete. However, the parties do not dispute that it is improper for an interrogatory to seek the writings or the opinions of an expert prior to the exchange of expert witnesses. Fed. R. Civ. P. 33(a)(2) ("While "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of fact to law," the court can allow a party to wait to answer such an interrogatory "until designated discovery is complete").

Acknowledging that expert opinions are privileged, Cal Water clarifies that it does not seek an expert report or expert opinions; instead Cal Water seeks the data that underlies the expert opinions. Because Coppola represents that all raw data collected to date; including testing results, water level, Cal Water's pump rates, and PCE concentrations has been produced, the Court infers that the heart of the parties' dispute is not whether the raw data is discoverable, but whether Coppola's references to the public domain or large files constitutes a satisfactory interrogatory response.

Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding could[.]

At oral argument, Coppola explained that their interrogatory responses point to a relatively small number of documents (2,000 to 3,000), all of which arguably support a response to the broad nature of Cal Water's interrogatories. Coppola argued that they are not required to parse through their discovery responses and produce specific answers to Cal Water's interrogatories. The Court agrees.

Federal Rule of Civil Procedure 33(d) gives Coppola the option to simply specify the documents that must be reviewed to ascertain the answers sought by Cal Water. Further, because it appears that the burden of combing through these documents would be substantially the same for either party, Coppola is permitted to cause Cal Water to bear that burden. Coppola's interrogatory responses pointing Cal Water

to the public domain and other documents such as the DTSC report therefore satisfies Plaintiffs' burden under Rule 33. Accordingly, as all of the raw facts, data, and testing results have already been produced by Coppola, Cal-Water's Motion to Compel Interrogatories Nos. 3-8 is DENIED.

### 2.    Requests for Admission (Nos. 6, 7, 9).

Cal-Water challenges three of Plaintiffs' responses to requests for admission including that: Plaintiffs failure to admit that the dry cleaning businesses on their property were a source of PCE contamination in soil and groundwater (RFA Nos. 6 and 7) and that Coppola has the legal right to control the actions of their tenants (RFA No. 9). Coppola objects that Cal-Water's RFA's seek a legal conclusion, specifically that: (1) the source of the PCE contamination is heavily in dispute and (2) must be determined by an expert. According to Coppola, an admission as to the source of PCE, this early in the case, is premature.

In a request for admission, a party may seek an admission of "fact, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Although Rule 36 allows for requests applying law to fact, "[r]equests for admissions cannot be used to compel an admission of a conclusion of law." *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal 1999) (citation omitted); *see also Stark-Romero v. Nat'l R.R. Passenger Corp.*, 275 F.R.D. 551, 554 (D.N.M. 2011) ("It is still true, however, that one party cannot demand that the other party admit the truth of a legal conclusion." (collecting cases*)); Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("[A] request for admission which involves a pure matter of law, that is, requests for admission which are related to the facts of the case, are considered inappropriate.").

Such is the case here. Plaintiffs argue that whether Coppola's property constitutes "a source" of PCE contamination in either the soil or groundwater near Coppola's Property is a legal term of art that is subject to an expert opinion. As explained by Coppola, determining a source of PCE contamination within the CERCLA context is not a straightforward determination as to which properties released PCE. CERCLA does not define "source," but it does assign the scope of liability based on "potentially responsible parties." 42 U.S.C. § 9607(a)(4)(B). CERCLA casts a wide net in bringing in responsible parties and arguably, a potentially responsible party may not be a source of contamination. While Coppola has been identified as a "responsible party" by the DTSC, this is distinct from the conclusion

that Coppola is a source of PCE contamination. Plaintiffs' consultants are engaged in an ongoing investigation to determine the full delineation of the PCE plume to establish each source. Additionally, Cal Water's RFA No. 9 explicitly seeks a legal conclusion in seeking an admission that Coppola had the "legal right to control" a business. The legal right to control a business is a factor in determining whether a party may qualify as a potentially responsible party, a prerequisite to a finding of liability. *Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 929 (9th Cir. 2013) (discussing potentially responsible party and the "narrowly applicable" "innocent landowner" defense pursuant to 42 U.S.C. §§ 9601(35), 9607(a)-(b)). As a result, this legal status is an issue of contention. Under such circumstances, Plaintiffs are not bound to answer the RFA's and have properly objected on the ground that it calls for a legal conclusion. Accordingly, Cal Water's Motion to Compel responses to RFA's 6, 7 and 9 is DENIED.

## IV. CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiffs' motion to compel production of documents regarding wells within the City of Visalia (Set One, No. 59, 60, 69, 79, 83-85, 89-107, 109-111, 113-128, 131-136, 138-142) is DENIED;

2. Plaintiffs' motion to compel production of documents regarding Cal Water's Property at Issue (Set One, No. 28-30, 61, 64-66, 71) is GRANTED;

3. Plaintiffs' motion to compel Cal Water's previous PCE litigation (Set Two, No.143-146), is DENIED;

4. Cal Water's motion to compel further interrogatory responses (Interrogatories Nos. 3-8) is DENIED;

5. Cal Water's motion to compel (RFA's Nos. 6, 7 and 9) is DENIED;

6. Cal Water SHALL produce documents responsive to Plaintiffs' propounded discovery as delineated above within 30 days of the service of this order.

IT IS SO ORDERED.

Dated: **April 4, 2015**          /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE