1

2

3

4          UNITED STATES DISTRICT COURT

5          EASTERN DISTRICT OF CALIFORNIA

6

7    GARY COPPOLA, et al.,                    CASE NO. 1:11-CV-1257  AWI BAM

8              Plaintiffs
                                             ORDER ON CAL WATER'S MOTION
9         v.                                 TO APPROVE SETTLEMENT

10   GREGORY SMITH, et al.,
                                             (Doc. No. 390)
11             Defendants

12

13   _____

14   AND RELATED CLAIMS

15

16          This is an environmental law case that arises from the chemical contamination of property

17   surrounding a dry cleaning business in Visalia, California.  Defendant Cal Water has filed a

18   motion to approve settlement and for the Court to hold that the settlement is in "good faith" under

19   California Code of Civil Procedure §§ 877 and 877.6 (hereinafter "§ 877" and "§ 877.6").  See

20   Doc. No. 390.  The time to formally oppose Cal Water's motion has now passed, and no party to

21   this case has filed an opposition to Cal Water's motion.  For the reasons that follow, Cal Water's

22   motion will be granted.

23

24                                    **BACKGROUND**

25          As explained in previous orders,[1] Plaintiffs own the real property and a dry cleaning

26   business located at 717 West Main Street ("717 W. Main"), Visalia, California.  Cal Water owns

27   _____

28   [1] A more detailed description of the facts in this case may be found in Coppola v. Smith, 19 F.Supp.3d 960 (E.D. Cal.
     2014) and Coppola v. Smith, 935 F.Supp.2d 993 (E.D. Cal. 2013)

1   and operates public drinking water systems throughout California, including the City of Visalia.

2   Cal Water owned and operated Well CWS 02-03 ("the Well") until 2005, at which time the Well

3   was abandoned.  In 2000, however, Cal Water stopped operating the Well because of increasing

4   levels of the hazardous substance tetrachloroethylene, also known as perchloroethylene ("PCE").

5   The Well is located 20 feet east of 717 W. Main.

6        On October 28, 2009, the California Department of Toxic Substances Control ("DTSC")

7   informed Plaintiffs that it was investigating the occurrence of PCE in the soil and groundwater at

8   717 W. Main.  It was later determined that the soil and groundwater both at and near 717 W. Main

9   was contaminated with PCE.

10        In June 2011, Plaintiffs and the DTSC entered into a Consent Order that *inter alia* required

11   Plaintiffs to conduct studies and clean-up efforts regarding the PCE plume at and near 717 W.

12   Main.

13        Plaintiffs brought this lawsuit in 2011, and alleged *inter alia* that, in addition to PCE being

14   released by two other dry cleaning operations in the area, Cal Water's operation of the Well led to

15   the release of PCE.  Plaintiffs seek damages and contribution and indemnification associated with

16   the PCE soil and groundwater contamination and clean up.

17        Through several Rule 12(b)(6) motions to dismiss, the claims against Cal Water have been

18   limited.  In addition to declaratory relief, Plaintiffs have claims against Cal Water under 42 U.S.C.

19   §§ 9607(a) and 9613(f) of the Comprehensive Environmental Response, Compensation, and

20   Liability Act ("CERCLA").  Plaintiffs' CERCLA § 9607(a) claim against Cal Water is based on

21   PCE-contaminated water entering the Well during pumping, but then somehow exiting ("leaking,"

22   "discharging," etc.) the Well when the Well's pump was cycled off.  See <u>Coppola v. Smith</u>, 19

23   F.Supp.3d 960, 973 (E.D. Cal. 2014).

24

25                              **DEFENDANTS' MOTION**

26        *Defendant's Argument*

27        Cal Water states that it and Plaintiffs have agreed to settle all claims between them in

28   exchange for mutual waivers and the payment by Cal Water of $110,00 (each side to bear their

1   own attorney's fees and costs), but the settlement is contingent upon the Court making a finding of

2   "good faith" under § 877 and § 877.6.  Cal Water argues that several considerations demonstrate

3   that the settlement has been made in "good faith."  First, the claims against it have been limited to

4   PCE contaminated water that actually entered and then exited the Well.  However, there is

5   evidence that testing results from 1984 through 2005 show that the Well did not exceed the

6   applicable regulatory limit for PCE.  Further, in a state court action, the California Superior Court

7   has found that the amount of PCE in the Well did not constitute a legally cognizable injury.

8   Second, there are multiple defendants in this case who allegedly contributed to the groundwater

9   pollution, and Plaintiffs' most recent supplemental discovery shows that it has incurred $600,000

10  in total damages.  Third, there is no collusion in this case.  The settlement was reached after

11  extensive negotiations.  Fourth, the settlement saves costs and other resources that would

12  otherwise be expended during litigation.  Given these considerations, the settlement is clearly

13  within the ballpark of what is reasonable, and thus, is a "good faith" settlement.

14          *Other Parties' Positions*

15          Defendants Martin & Martin Properties, Paragon Cleaners, Inc., and Richard Laster have

16  each filed formal notices of non-opposition.  See Doc. Nos. 403, 404, and 405.  Plaintiffs have

17  filed a notice of non-opposition and expressly join Cal Water's request to find that the settlement

18  to be in good faith.  See Doc. No. 400.  Plaintiffs point out that there are disputed factual issues,

19  including the standards used by Cal Water relating to regulatory PCE levels and whether the Well

20  ever exceeded the applicable regulatory limit, and this dispute supports the fairness of the

21  settlement.  See id.  Finally, Cal Water represented in its motion that it did not anticipate any other

22  party opposing its motion, and that it received written confirmation from the City of Visalia that

23  the City would not file an opposition.  See Doc. No. 390 at 8:13-15, 10:14-17.  Consistent with

24  these representations, neither the City of Visalia nor any other defendant has objected to or

25  opposed Cal Water's motion in any way.

26          *Relevant Terms of Settlement*

27          The settlement agreement settles all claims and issues between Cal Water and Plaintiffs, as

28  raised in Plaintiffs' complaint and Cal Water's counterclaim.  In part, the settlement provides that

1    Cal Water will pay Plaintiffs $110,000.00, Plaintiffs will dismiss their complaint against Cal

2    Water, and Cal Water will dismiss its counterclaim against Plaintiffs.  There is a denial of liability,

3    and Cal Water and Plaintiffs are to bear their own attorneys' fees and costs.  The settlement is

4    contingent upon the Court finding that the settlement is made in good faith under *inter alia* § 877,

5    § 877.6, § 4 of the Uniform Contribution Among Tortfeasors Act, and the entry of a contribution

6    and indemnity bar order.  See Doc. No. 390 at Ex. A, § 3.

7            *Discussion*

8            1.    Method of Review

9            Cal Water argues that the Court has the authority to apply § 877 and § 877.6 and to find

10   that a partial settlement, i.e. a settlement that disposes of less than all of the parties, has been made

11   in "good faith."  It is true that "[w]hen a district court . . . hears state law claims based on

12   supplemental jurisdiction, the court applies state substantive law *to the state law claims*."  Mason

13   and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011)

14   (emphasis added).  Further, § 877[2] is a substantive law (§ 877.6 is the procedural mechanism for

15   implementing § 877), which the Court can apply.  See id.; Federal Sav. & Loan Ins. Corp. v.

16   Butler, 904 F.2d 505, 511 (9th Cir. 1990).  However, the only claims alleged against Cal Water are

17   CERCLA claims, and CERCLA is not a state law.  Nevertheless, one of CERCLA's "core

18   principles" is to "foster settlement through its system of incentives and without unnecessarily

19   further complicating already complicated litigation."  AmeriPride Servs. v. Texas Eastern

20   Overseas, Inc., 782 F.3d 474, 486 (9th Cir. 2015); Chubb Custom Ins. Co. v. Space Sys./Loral,

21   Inc., 710 F.3d 946, 971 (9th Cir. 2013).  Therefore, courts review settlements and generally enter

22   contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and

23   adequate.  See City of San Diego v. National Steel & Shipbuilding Co., 2015 U.S. Dist. LEXIS

24   53078, *33-*36 (S.D. Cal. Apr. 21, 2015); Lewis v. Russell, 2012 U.S. Dist. LEXIS 161343, *11-

25
_____

26   [2] Sec. 877 reads in relevant part:  "Where a release, dismissal with or without prejudice, or a covenant not to sue or
     not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors
27   claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it
     shall have the following effect:   (a) It shall not discharge any other such party from liability unless its terms so
     provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the
28   covenant, or in the amount of the consideration paid for it, whichever is the greater.  (b) It shall discharge the party to
     whom it is given from all liability for any contribution to any other parties. . . ."

1  *19 (E.D. Cal. Nov. 9, 2012); AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc., 2007 U.S.

2  Dist. LEXIS 51364, *6-*7 (E.D. Cal. July 2, 2007); Patterson Envtl. Response Trust v. Autocare

3  2000, Inc., 2002 U.S. Dist. LEXIS 28323, *13-*25 (E.D. Cal. July 8, 2002).

4       The methodology used by federal courts in California to assess partial settlements and

5  contribution bars is not always uniform.  Cf., e.g., National Steel¸ 2015 U.S. Dist. LEXIS 53078 at

6  *34-*40 (separate analysis between state law and federal law) with Whitehurst v. Heinl, 2015 U.S.

7  Dist. LEXIS 49147, *8-*15 (N.D. Cal. Apr. 14, 2015) (simply applying § 877 and § 877.6 to

8  CERCLA claims without discussion of federal common law).  However, a number of courts

9  consult § 877 and § 877.6, and either § 6 of the Uniform Comparative Fault Act ("UCFA")[3] or § 4

10  of the Uniform Contribution Among Tortfeasors Act ("UCATA")[4] in analyzing settlement

11  agreements in CERCLA cases.  E.g. Heim v. Estate of Heim, 2014 U.S. Dist. LEXIS 46297, *12-

12  *26 (N.D. Cal. Apr. 2, 2014); Tyco Thermal Controls LLC v. Redwood Industrial, 2010 U.S. Dist.

13  LEXIS 91842, *11-*35, *41-*46 (N.D. Cal. Aug. 12, 2010); Valley Indus., 2007 U.S. Dist.

14  LEXIS 51364 at *6-*12.

15       The UCFA and the UCATA are "model acts . . . that advocate competing methods of

16  accounting for a settling party's share when determining the amount of a nonsettling defendant's

17  liability."  AmeriPride, 782 F.3d at 483.  The UCFA and UCATA are consulted when allocating

18  funds because CERCLA is silent on how to allocate settlement proceeds when the settlement is

19  between private parties, i.e. not a settlement involving a governmental entity.  See id.; American

20  Cyanamid Co. v. Capuano¸381 F.3d 6, 20 (1st Cir. 2004).

21       Courts consult § 877 and § 877.6 because litigants in California often expressly request

22

23  [3] UCFA § 6 reads:  "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable

24  discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the
same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the

25  amount of the released person's equitable share of the obligation, determined in accordance with the provisions of
Section 2."  See AmeriPride, 782 F.3d at 483 n.5.

26  [4] UCATA § 4 reads:  "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one

27  of two or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of
the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim

28  against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the
consideration paid for it, whichever is the greater; and  (b) It discharges the tortfeasor to whom it is given from all
liability for contribution to any other tortfeasor."  See AmeriPride, 782 F.3d at 484 n.6.

1    such a finding, and if the finding is made, a contribution and indemnity bar is imposed by

2    operation of law.  See Cal. Code Civ. P. § 877.6(c).  In other words, these statutes are the state law

3    analog to the federal common law for approving settlements and imposing contribution bars.

4    However, there is another reasons to consult § 877 and § 877.6.  Under these statutes, a settlement

5    is in "good faith" if it is "within the reasonable range of the settling tortfeasor's proportional share

6    of comparative liability for the plaintiff's injuries."  Tech-Bilt, Inc. v. Woodward-Clyde &

7    Assoc's, 38 Cal.3d 488, 499 (1985).  The factors generally considered in determining whether a

8    settlement is in "good faith" under § 877 and § 877.6 are similar to the facts highlighted by courts

9    in finding a CERCLA settlement to be fair, reasonable, and adequate.  Cf. National Steel, 2015

10   U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21,[5] and

11   Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17 with Tech-Bilt, 38 Cal.3d at 499;

12   Cahill v. San Diego Gas & Elec. Co., 194 Cal.App.4th 939, 959 (2011).  Both sets of

13   factors/considerations take into account the amount of the settlement, the settlor's proportionate

14   share of liability, claims and defenses, financial conditions, and the recognition that there is a

15   benefit to settling by saving resources and litigation expenses.  See National Steel, 2015 U.S. Dist.

16   LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21, Patterson Envtl.,

17   2002 U.S. Dist. LEXIS 28323 at *13-*17; Tech-Bilt, 38 Cal.3d at 499.  Given the similarities, it is

18   difficult to envision a settlement that is in "good faith" but not fair, reasonable, and adequate, or

19   vice versa.  Therefore, in this case, the Court will examine and make findings regarding "good

20   faith" under § 877 and § 877.6 in order to determine whether the settlement is fair, adequate, and

21   reasonable.  See Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist.

22   Lexis 51364 at *6-*12.

23        2.    Application

24             a.    Tech-Bilt Factors

25        Courts review the following nonexclusive factors from Tech-Bilt in order to determine if a

26   settlement is within a "reasonable range" and thus, in "good faith" under § 877 and § 877.6:   (1) a

27

28   _____
     [5] The Court notes that Lewis's analysis with respect to federal claims, although in a separate section, is very similar to
     its analysis of "good faith" with respect to state law claims.  See Lewis, 2012 U.S. Dist. LEXIS 161434 at *18-*21.

rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  See Mason and Dixon, 632 F.3d at 1064; Bay Development, Ltd. v. Superior Ct., 50 Cal.3d 1012, 1027-28 (1990); Tech-Bilt, 38 Cal.3d at 499; Cahill, 194 Cal.App.4th at 959. A party opposing a motion for good faith settlement has the burden of demonstrating the lack of good faith.  Tech-Bilt, 38 Cal.3d at  499–500; PacifiCare of California v. Bright Medical Associates, Inc., 198 Cal.App.4th 1451, 1465 (2011).  If a settlement is "in good faith," then § 877.6 bars claims for contribution and indemnity against the settling tortfeasor by the nonsettling tortfeasors.  See Cal. Code Civ. P. § 877.6(c); In re Heritage Bond Litig., 546 F.3d 667, 680-81 (9th Cir. 2008); Gackstetter v. Frawley, 135 Cal.App.4th 1257, 1274 (2006).

Here, with respect to Factors 1 and 2, the amount of Cal Water's settlement appears greater than its apparent proportionate liability.[6]  There are twelve other defendants besides Cal Water listed on the docket.  Further, the basis for Cal Water's liability to Plaintiffs has been limited by the Court.  See Coppola, 19 F.Supp.3d at 971-77.  Plaintiffs may only pursue a claim that is based on contaminated water that "entered and exited" the Well at issue.  See id.  Finally, although subject to dispute, Cal Water's twenty years of testing-records indicate no violations of the regulatory limits for PCE.  Because it is not a violation of law for a water company to deal with and provide water that has some PCE in it, the testing records are quite favorable to Cal Water. This evidence, when combined with the number of defendants and the limited basis of liability, indicates that Cal Water's proportionate liability for the PCE contamination plume at this time would not be particularly high.  Despite this, the amount of settlement is substantial and represents nearly 18% of Plaintiffs' disclosed damages.  Factors 1 and 2 favor approving the settlement.

---

[6] The Court notes that there are no cross-claims alleged against Cal Water by any of the co-defendants.  Cf. PacifiCare, 198 Cal.App.4th at 1465  ("When evaluating whether the parties reached a settlement in good faith, a trial court must examine not only the settling tortfeasor's potential liability to the plaintiff, but also the settling tortfeasor's potential liability to all non-settling tortfeasors.").

With respect to Factor 3, there are three Plaintiffs in this case: two trusts and one natural person (who is also the trustee of both trusts). The Plaintiffs are represented by the same counsel, appear to have family connections, own 717 W. Main, and paid environmental clean-up costs. See Doc. No. 402. Given the apparent close association and same legal representation of Plaintiffs, there does not appear to be a significant risk of improper allocation of funds. Therefore, this factor is neutral.

As to Factor 4, settlement generally results in a partial saving of litigation costs, and saves courts and juries time and other valuable resources. This factor favors approving the settlement.

With respect to Factor 5, Cal Water is not required to present evidence of its financial condition or insurance status. See Cahill, 194 Cal.App.4th at 968. Cal Water has never contended that its financial status should justify a lower settlement amount, and, although insurance is involved, see Doc. No. 390 at Ex. A, § 4(c), no party has suggested that an insurance company should contribute larger sum to the settlement. Cf. Long Beach Memorial Med. Ctr. v. Superior Ct., 172 Cal.App.4th 865, 874-75 (2010) (noting that being insolvent or underinsured or uninsured may support a lower settlement amount, these considerations did not apply where the settlement was 10% of available policy limits and the defendant was solvent). This factor is neutral.

Finally, as to Factor 6, no collusion is apparent. Discovery has been on-going, both sides are represented by competent counsel, Cal Water has been an active litigant (particularly through Rule 12(b)(6) motions to dismiss), and there is no reason to believe that the settlement was not vigorously negotiated at arm's-length. More importantly, no defendant has objected to or opposed Cal Water's motion in any way. In fact, as discussed above, some Defendants have filed formal notices of non-opposition. The absence of an opposition or objection from any other party is highly telling and is clearly indicative of reasonableness and good faith. This factor favors approval of the settlement.

In sum, *Tech-Bilt* factors 1, 2, 4, and 6 weigh in favor of a finding of reasonableness and good faith, while *Tech-Bilt* factors 3 and 5 are neutral. The *Tech-Bilt* factors demonstrate that the $110,000 settlement is "within the reasonable range of [Cal Water's] proportional share of comparative liability for the [Plaintiffs'] injuries." There is nothing before the Court to suggest

1   that the settlement is anything other than fair, reasonable, and adequate.  Therefore, the Court

2   concludes that the settlement is fair, adequate, and reasonable, and was made in good faith for

3   purposes of § 877 and § 877.6.  See Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley

4   Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12; cf. Lewis, 2012 U.S. Dist. LEXIS 161434 at *11-

5   *21 (conducting similar but separate analyses of federal law and state law claims to approve

6   settlement); Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *18-*26 (same).  The Court will

7   approve the settlement and enter a contribution and indemnity bar order.  See National Steel, 2015

8   U.S. Dist. LEXIS 53078 at *33-*36; Heim, 2014 U.S. Dist. LEXIS 46297 at *16-*26; Lewis,

9   2012 U.S. Dist. LEXIS 161343 at *11-*21; Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-

10   *12; Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*26.

11                   b.        Allocation of Settlement Funds

12           When a settlement is reached in a CERCLA contribution case such as this one, courts have

13   the discretion under 42 U.S.C. § 9613(f)(1) to determine the most equitable method of accounting

14   for settlements between private parties.  AmeriPride, 782 F.3d at 487.  Districts courts may utilize

15   either the "proportionate share approach" of § 6 of the UCFA or the "pro tanto approach" of § 4 of

16   the UCATA.  See id. at 483-87.  This flexibility furthers one of CERCLA's core purposes, to

17   "foster settlement."  Id. at 486.  Under the proportionate share approach, the settlement reduces the

18   injured party's claims against the non-settling tortfeasors by the amount of the settling tortfeasor's

19   proportionate share of the damages.  See id. at 483-84.  The plaintiff bears the risk of a "bad

20   settlement" under this approach.  See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 161 (4t h Cir.

21   1991); Adobe Lumber, Inc. v. Hellman, 2009 U.S. Dist. LEXIS 10569, *16 (E.D. Cal. Feb. 3,

22   2009).  Under the pro tanto approach, the settlement reduces the injured party's claims against

23   non-settling tortfeasors by the dollar value of the settlement.  See AmeriPride, 782 F.3d at 484.

24   The non-settling defendants bear the risk of a "bad settlement" under this approach.  In re Jiffy

25   Lube, 927 F.2d at 161; Adobe Lumber, 2009 U.S. Dist. LEXIS 10569 at *16.  Section 877 adopts

26   the "pro tanto approach" of § 4 of UCATA.  See Butler, 904 F.2d at 511.  Prior to the Ninth

27   Circuit's *AmeriPride* decision, most courts within the Ninth Circuit followed the UCFA.  See

28   Lewis, 2012 U.S. Dist. LEXIS 161343 at *15.

Here, after due consideration, the Court finds that the pro tanto approach of UCATA is preferable to the UCFA in this case for several related reasons. First, the settlement requires that the Court make a finding of "good faith" under § 877 and § 877.6, and § 4 of UCATA. See Doc. No. 390 at Ex. A, § 3. This shows that Plaintiffs and Cal Water intend for the pro tanto approach to be used to account for the settlement proceeds. Cf. Butler, 904 F.2d at 511 (noting that § 877 adopts UCATA). No party has objected to any aspect of Cal Water's motion or the settlement, including utilization of § 877 and § 877.6 or § 4 of UCATA. This leads to the conclusion that every other affected party is comfortable with the pro tanto approach. Cf. Adobe Lumber, 2009 U.S. Dist. LEXIS 10569 at *16 (non-settling defendants bear the burden of risking a "bad settlement" under pro tanto). Second, if the Court declines to follow UCATA, the settlement by its own terms would collapse. See Doc. No. 390 at Ex. A, § 3. The collapse of this fair, adequate, reasonable, and good faith agreement does not further a core CERCLA purpose of "fostering settlements." See AmeriPride, 782 F.3d at 486. Finally, Plaintiffs do not dispute that they have sustained $600,000 in damages. Cal Water is willing to pay $110,000 of those damages. This is no trifling sum, and it goes a good way to making Plaintiffs whole. Considering the number of defendants and the twenty-years of water testing results (again, subject to dispute) that show compliance with regulatory limits, the likelihood that Cal Water would experience a windfall by only paying $110,000.00, or that the non-settling defendants would have to pay materially more in damages than they otherwise would have but for the settlement, is not particularly high. Therefore, the pro tanto approach will govern this case. See id.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Cal Water's motion for good faith approval of the settlement agreement (Doc. No. 390) is GRANTED;

2. Under California Code of Civil Procedure §§ 877 and 877.6, and § 4 of the UCATA, the settlement agreement (Ex. A to Doc. No. 390) is in "good faith" and is a fair, adequate, and reasonable settlement;

3.      Once notice is provided to the Court that the $110,000 has been paid by Cal Water to Plaintiffs, no contribution or indemnity claims against Cal Water arising out of the Eighth Amended Complaint, the Seventh Amended Complaint, or Cal Water's counterclaim will be allowed;

4.      All settlement funds in this case will be accounted for in relation to non-settling parties through the pro tanto approach of UCATA; and

5.      Within the time frame contemplated by the settlement agreement (fifteen days from service of this order), Plaintiffs and Cal Water shall each file Rule 41 dismissal requests.[7]

IT IS SO ORDERED.

Dated:   June 20, 2016

_____

SENIOR  DISTRICT  JUDGE

---

[7] Upon receipt of the Rule 41 documents, the Court intends to dismiss Cal Water's counterclaim and Cal Water from this case.