UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY COPPOLA, et al.,<br><br>Plaintiffs<br><br>v.<br><br>GREGORY SMITH, et al.,<br><br>Defendants<br><br>AND RELATED CLAIMS | CASE NO. 1:11-CV-1257 AWI BAM<br><br>ORDER VACATING JULY 11, 2016 HEARING AND ORDER ON MARTIN AND MARTIN PROPERTIES, LLC'S MOTION TO APPROVE SETTLEMENT<br><br>(Doc. No. 414) |

This is an environmental law case that arises from the chemical contamination of property surrounding a dry cleaning business in Visalia, California. Defendant Martin & Martin Properties, LLC ("Martin") has filed a motion to approve settlement and for the Court to hold that the settlement is in "good faith" under California Code of Civil Procedure §§ 877 and 877.6 (hereinafter "§ 877" and "§ 877.6"). See Doc. No. 414. Hearing on this motion is set for July 11, 2016. The time to formally oppose Martin's motion has now passed, and no party to this case has filed an opposition. The Court will vacate the July 11, 2016 hearing date and instead issue this order, which grants Martin's motion.

**BACKGROUND**

As explained in previous orders,[1] Plaintiffs own the real property and a dry cleaning business located at 717 W. Main Street ("717 W. Main"), Visalia, California. Martin is a real

---

[1] A more detailed description of the facts in this case may be found in *Coppola v. Smith*, 19 F.Supp.3d 960 (E.D. Cal. 2014), *Coppola v. Smith*, 935 F.Supp.2d 993 (E.D. Cal. 2013), and *Coppola v. Smith*, 2015 U.S. Dist. LEXIS 5127 (E.D. Cal. Jan. 15, 2015).

estate investment company that, since 1995, has owned 520 W. Main ("520 W. Main"), Visalia, California. Unbeknownst to Martin, from 1959 to possibly 1971, a dry cleaning business was operated at 110 N. Willis, Visalia, California. In the early 1970's, 520 W. Main was constructed. In the construction process, the area that had been known as "110 N. Willis" became part of the northwest corner of 520 W. Main.

On October 28, 2009, the California Department of Toxic Substances Control ("DTSC") informed Plaintiffs that it was investigating the occurrence of PCE in the soil and groundwater at 717 W. Main. It was later determined that the soil and groundwater both at and near 717 W. Main were contaminated with PCE.

Earlier in 2009, the Environmental Protection Agency ("EPA") detected low levels of PCE at or near 520 W. Main. However, the EPA determined that no further assessment was needed, it could not determine that PCE was released from 520 W. Main, and that no remedial steps by Martin were necessary.

In June 2011, Plaintiffs and the DTSC entered into a Consent Order that *inter alia* required Plaintiffs to conduct studies and clean-up efforts of the PCE plume at and near 717 W. Main.

Plaintiffs brought this lawsuit in 2011. As to Martin, Plaintiffs allege claims under 42 U.S.C. §§ 9607(a) and 9613(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), continuing private nuisance, continuing private trespass, declaratory relief, and common contribution, all based on alleged releases of PCE attributable to the former dry cleaning business (110 N. Willis). Martin has filed counterclaims against Plaintiffs for violation of CERCLA § 9607(b)(3) and § 9613, equitable contribution, equitable indemnity, nuisance, and trespass.

On January 15, 2015, the Court issued an order on Martin's motion for summary judgment. The Court granted partial summary adjudication on several issues, but denied summary adjudication on the issue of whether Martin had made appropriate inquiries in accordance with customary standards and practices prior to purchasing 520 W. Main (which is a necessary element of CERCLA's innocent landowner defense). See Coppola v. Smith, 2015 U.S. Dist. LEXIS 5127, *55-*56 (E.D. Cal. Jan. 15, 2015). The Court also denied summary judgment on Plaintiffs' claims

for nuisance, trespass, contribution, and declaratory judgment.  See id.  However, the Court granted Martin permission to file a subsequent summary judgment motion in accordance with any scheduling orders that were to issue.  See id. at *55.

### DEFENDANTS' MOTION

*Defendant's Argument*

Martin states that it and Plaintiffs have agreed to settle all claims between them in exchange for mutual waivers and the payment by Martin of $150,000, but the settlement is contingent upon the Court making a finding of "good faith" under § 877 and § 877.6.  Martin argues that the settlement meets the *Tech-Bilt* factors, which shows that the settlement is in good faith.  First, the amount that Martin agrees to pay is within the reasonable range of its proportional responsibility.  Plaintiffs have incurred $600,000 in clean-up costs to date, there are multiple defendants, and the Court's prior summary judgment rulings and the actions of the EPA are very favorable towards Martin.  Second, Martin is a small family owned business that does not have insurance to cover any alleged liability.  Third, there has been no collusion, and the settlement was reached after extensive negotiation and formal mediation.  Further, no other party has indicated that they will oppose this motion, and all parties were notified prior to filing this motion.  Fourth, it is understood that a party should pay less in settlement than by way of a verdict.  Given these considerations, the settlement is clearly within the ballpark of what is reasonable, and thus, is a "good faith" settlement.

*Other Parties' Positions*

Defendants Paragon Cleaners, Inc. and Richard Laster have each filed formal notices of non-opposition.  See Doc. Nos. 419, 421.  Plaintiffs have filed a notice of non-opposition and expressly join Martin's request to find that the settlement is in good faith.  See Doc. No. 417.  Plaintiffs point out that there are disputed factual issues, including the conclusions that Martin draws from the Court's summary judgment order, whether Martin exercised due diligence in the purchase of 520 W. Main, and whether there is evidence of "releases" of PCE from 520 W. Main.  No other party has objected to or opposed Martin's motion in any way.

*Relevant Terms of Settlement*

The settlement agreement settles all claims and issues between Martin and Plaintiffs, as raised in Plaintiffs' active complaint and Martin's counterclaims. See Murray Dec. Ex. A. In part, the settlement provides that Martin will pay Plaintiffs $150,000.00 ($60,000 to be paid now and the rest to be paid annually in increments of $18,000.00), Plaintiffs will dismiss their complaint against Martin, and Martin will dismiss its counterclaims against Plaintiffs. See id. at pp. 2-3. There is a denial of liability, and Martin and Plaintiffs are to bear their own attorneys' fees and costs. The settlement is contingent upon the Court finding that the settlement is made in good faith under *inter alia* § 877, § 877.6, and § 4 of the Uniform Contribution Among Tortfeasors Act, and the entry of a contribution and indemnity bar order. See id.

*Discussion*

1. Method of Review

"When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) (emphasis added). Section 877[2] is a substantive law (§ 877.6 is the procedural mechanism for implementing § 877), which the Court can apply. See id.; Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990). Therefore, § 877 will be applied to the state law claims at issue between Martin and Plaintiffs. See Mason and Dixon, 632 F.3d at 1060.

As for the CERCLA claims, one of CERCLA's "core principles" is to "foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation." AmeriPride Servs. v. Texas Eastern Overseas, Inc., 782 F.3d 474, 486 (9th Cir. 2015); Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 971 (9th Cir. 2013). Therefore, courts review settlements and generally enter contribution and indemnity bar

---

[2] Sec. 877 reads in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:  (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.  (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ."

4

orders in CERCLA cases if the settlement is fair, reasonable, and adequate.  See Coppola v. Smith, 2016 U.S. Dist. LEXIS 80087, *15-*23 (E.D. Cal. June 20, 2016); City of San Diego v. National Steel & Shipbuilding Co., 2015 U.S. Dist. LEXIS 53078, *33-*36 (S.D. Cal. Apr. 21, 2015); Lewis v. Russell, 2012 U.S. Dist. LEXIS 161343, *11-*19 (E.D. Cal. Nov. 9, 2012); AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc., 2007 U.S. Dist. LEXIS 51364, *6-*7 (E.D. Cal. July 2, 2007); Patterson Envtl. Response Trust v. Autocare 2000, Inc., 2002 U.S. Dist. LEXIS 28323, *13-*25 (E.D. Cal. July 8, 2002).

The methodology used by federal courts in California to assess partial settlements and contribution bars is not always uniform.  Cf., e.g., National Steel, 2015 U.S. Dist. LEXIS 53078 at *34-*40 (separate analysis between state law and federal law) with Whitehurst v. Heinl, 2015 U.S. Dist. LEXIS 49147, *8-*15 (N.D. Cal. Apr. 14, 2015) (simply applying § 877 and § 877.6 to CERCLA claims without discussion of federal common law).  However, a number of courts consult § 877 and § 877.6, and either § 6 of the Uniform Comparative Fault Act ("UCFA")[3] or § 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA")[4] in analyzing settlement agreements in CERCLA cases.  E.g. Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*26; Heim v. Estate of Heim, 2014 U.S. Dist. LEXIS 46297, *12-*26 (N.D. Cal. Apr. 2, 2014); Tyco Thermal Controls LLC v. Redwood Industrial, 2010 U.S. Dist. LEXIS 91842, *11-*35, *41-*46 (N.D. Cal. Aug. 12, 2010); Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12.  The UCFA and the UCATA are "model acts . . . that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability."  AmeriPride, 782 F.3d at 483.  The UCFA and UCATA are consulted when allocating funds because CERCLA is silent

---

[3] UCFA § 6 reads: "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2."  See AmeriPride, 782 F.3d at 483 n.5.

[4] UCATA § 4 reads: "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and  (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."  See AmeriPride, 782 F.3d at 484 n.6.

on how to allocate settlement proceeds when the settlement is between private parties, i.e. not a settlement involving the United States or an individual State. See id.; American Cyanamid Co. v. Capuano, 381 F.3d 6, 20 (1st Cir. 2004).

Courts consult § 877 and § 877.6 because litigants in California often expressly request such a finding, and if the finding is made, a contribution and indemnity bar is imposed by operation of law. See Cal. Code Civ. P. § 877.6(c). In other words, these statutes are the state law analog to the federal common law for approving settlements and imposing contribution bars. However, there is another reasons to consult § 877 and § 877.6. Under these statutes, a settlement is in "good faith" if it is "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Tech-Bilt, Inc. v. Woodward-Clyde & Assoc's, 38 Cal.3d 488, 499 (1985). The factors generally considered in determining whether a settlement is in "good faith" under § 877 and § 877.6 are similar to the facts highlighted by courts in finding a CERCLA settlement to be fair, reasonable, and adequate. Cf. National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21,[5] and Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17 with Tech-Bilt, 38 Cal.3d at 499; Cahill v. San Diego Gas & Elec. Co., 194 Cal.App.4th 939, 959 (2011). Both sets of factors/considerations take into account the amount of the settlement, the settlor's proportionate share of liability, claims and defenses, financial conditions, and the recognition that there is a benefit to settling by saving resources and litigation expenses. See National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21, Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17; Tech-Bilt, 38 Cal.3d at 499. Given the similarities, it is difficult to envision a settlement that is in "good faith" but not fair, reasonable, and adequate, or *vice versa*. As such, the Court will examine and make findings regarding "good faith" under § 877 and § 877.6 as part its determination of whether the settlement of the CERCLA claims is fair, adequate, and reasonable. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *18; Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12.

---

[5] The Court notes that *Lewis*'s analysis with respect to federal claims, although in a separate section, is very similar to its analysis of "good faith" with respect to state law claims. See Lewis, 2012 U.S. Dist. LEXIS 161434 at *18-*21.

2. <u>Application</u>

   a. *Tech-Bilt* Factors

Courts review the following nonexclusive factors from *Tech-Bilt* in order to determine if a settlement is within a "reasonable range" and thus, in "good faith" under § 877 and § 877.6: (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. See <u>Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC</u>, 632 F.3d 1056, 1064 (9th Cir. 2011); <u>Bay Development, Ltd. v. Superior Ct.</u>, 50 Cal.3d 1012, 1027-28 (1990); <u>Tech-Bilt</u>, 38 Cal.3d at 499; <u>Cahill</u>, 194 Cal.App.4th at 959. A party opposing a motion for good faith settlement has the burden of demonstrating the lack of good faith. <u>Tech-Bilt</u>, 38 Cal.3d at 499–500; <u>PacifiCare of California v. Bright Medical Associates, Inc.</u>, 198 Cal.App.4th 1451, 1465 (2011). If a settlement is "in good faith," then § 877.6 bars claims for contribution and indemnity against the settling tortfeasor by the nonsettling tortfeasors. See Cal. Code Civ. P. § 877.6(c); <u>In re Heritage Bond Litig.</u>, 546 F.3d 667, 680-81 (9th Cir. 2008); <u>Gackstetter v. Frawley</u>, 135 Cal.App.4th 1257, 1274 (2006).

Here, with respect to Factors 1 and 2, the amount of Martin's settlement appears greater than its apparent proportionate liability.[6] There are twelve other defendants besides Martin listed on the docket. Further, the Court granted summary adjudication in favor Martin on many of the elements of the CERCLA innocent landowner defense. See <u>Coppola</u>, 2016 U.S. Dist. LEXIS 80087 at *55-*56. There is only one element truly at issue with respect to this affirmative defense, whether Martin made "appropriate inquiries." The evidence presented by the parties at that time showed that there was a genuine disputed issue of material fact. A reasonable trier of

---

[6] The Court notes that there are no cross-claims alleged against Martin by any of the co-defendants. Cf. <u>PacifiCare</u>, 198 Cal.App.4th at 1465 ("When evaluating whether the parties reached a settlement in good faith, a trial court must examine not only the settling tortfeasor's potential liability to the plaintiff, but also the settling tortfeasor's potential liability to all non-settling tortfeasors.").

7

fact could have found either in favor of or against Martin on this issue. Additional discovery has now occurred. If Martin could establish that it made "appropriate inquiries," then it is difficult to envision Martin suffering any liability on any other claims. Further, the EPA determined that there was an insufficient indication of a release from 520 W. Main to the groundwater and that no action by Martin was necessary. The EPA's determination, although subject to dispute by Plaintiffs, is very probative. The current state of Martin's innocent landowner affirmative defense, the actions of the EPA, and the number of defendants in this case, together indicate at this time that Martin's proportionate liability for the PCE contamination plume would not be particularly high. Despite this, the amount of settlement is substantial and represents 25% of Plaintiffs' disclosed damages. Therefore, Factors 1 and 2 favor approving the settlement.

With respect to Factor 3, there are three Plaintiffs in this case: two trusts and one natural person (who is also the trustee of both trusts). The Plaintiffs are represented by the same counsel, appear to have family connections, own 717 W. Main, and have paid environmental clean-up costs. See Doc. No. 402. Given the apparent close association and same legal representation of Plaintiffs, there does not appear to be a significant risk of improper allocation of funds. Therefore, this factor is neutral.

As to Factor 4, settlement generally results in a partial saving of litigation costs, and saves courts and juries time and other valuable resources. This factor favors approving the settlement.

With respect to Factor 5, Martin contends that it is a small family owned business and that it does not have insurance that covers this litigation or any associated liability. No party disputes these representations. The nature of Martin's business and the absence of insurance, especially when combined with Factors 1 and 2, show that Martin is not paying an unreasonably low amount in settlement. This factor favors approving the settlement.

Finally, as to Factor 6, no collusion is apparent. Discovery has been on-going, both sides are represented by competent counsel, Martin has been an active litigant, the parties engaged in mediation, and there is no reason to believe that the settlement was not vigorously negotiated at arm's-length. Critically, no defendant has objected to or opposed Martin's motion in any way. In fact, as discussed above, some Defendants have filed formal notices of non-opposition. The

1  absence of an opposition or objection from any other party is highly telling and is clearly
2  indicative of reasonableness and good faith. This factor favors approval of the settlement.
3        In sum, *Tech-Bilt* factors 1, 2, 4, 5, and 6 weigh in favor of a finding of reasonableness and
4  good faith, while *Tech-Bilt* factor 3 is neutral. The *Tech-Bilt* factors demonstrate that the
5  $150,000 settlement is "within the reasonable range of [Martin's] proportional share of
6  comparative liability for the [Plaintiffs'] injuries." There is nothing before the Court to suggest
7  that the settlement is anything other than fair, reasonable, and adequate. Therefore, the Court
8  concludes that the settlement is fair, adequate, and reasonable, and was made in good faith for
9  purposes of § 877 and § 877.6. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*23; Heim,
10 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12;
11 cf. Lewis, 2012 U.S. Dist. LEXIS 161434 at *11-*21 (conducting similar but separate analyses of
12 federal law and state law claims to approve settlement); Patterson Envtl., 2002 U.S. Dist. LEXIS
13 28323 at *18-*26 (same). The Court will approve the settlement and enter a contribution and
14 indemnity bar order. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*23; National Steel, 2015
15 U.S. Dist. LEXIS 53078 at *33-*36; Heim, 2014 U.S. Dist. LEXIS 46297 at *16-*26; Lewis,
16 2012 U.S. Dist. LEXIS 161343 at *11-*21; Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-
17 *12; Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*26.
18             b.      Allocation of Settlement Funds
19      When a settlement is reached in a CERCLA contribution case such as this one, courts have
20 the discretion under 42 U.S.C. § 9613(f)(1) to determine the most equitable method of accounting
21 for settlements between private parties. AmeriPride, 782 F.3d at 487. Districts courts may utilize
22 either the "proportionate share approach" of § 6 of the UCFA or the "pro tanto approach" of § 4 of
23 the UCATA. See id. at 483-87.
24      As part of the Court's order on Cal Water's motion for good faith approval of settlement,
25 the Court determined that all settlements in this case would be credited to the non-settling parties
26 through the pro tanto method. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *23-*26. The pro
27 tanto method is the method of § 877 and § 4 of UCATA, and this settlement is dependent upon
28 approval under those laws. See Doc. No. 414-1 at Ex. A at p.2. Moreover, once a court

determines the method by which a settlement is accounted for between the non-settling defendants, that approach should be utilized throughout the litigation. See <u>AmeriPride</u>, 782 F.3d at 488. Thus, consistent with *AmeriPride* and the reasoning and conclusion of the Court's order on Cal Water's motion, the proceeds of this settlement shall be credited to the non-settling parties through the pro tanto approach. See <u>id.</u>; <u>Coppola</u>, 2016 U.S. Dist. LEXIS 80087 at *23-*26.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The July 11, 2016 hearing date is VACATED;
2. Martin's motion for good faith approval of the settlement agreement (Doc. No. 414) is GRANTED;
3. Under California Code of Civil Procedure §§ 877 and 877.6, and § 4 of the UCATA, the settlement agreement (Ex. A to Doc. No. 414-1) is in "good faith" and is a fair, adequate, and reasonable settlement;
4. Once notice is provided to the Court that the initial $60,000 has been paid by Martin to Plaintiffs, no contribution or indemnity claims against Martin arising out of the Plaintiffs' Eighth Amended Complaint or Martin's counterclaims will be allowed;
5. The proceeds of this settlement will be accounted for in relation to non-settling parties through the pro tanto approach of UCATA; and
6. Within the time frame contemplated by the settlement agreement (fifteen days from service of this order), Plaintiffs and Martin shall each file Rule 41 dismissal requests.[7]

IT IS SO ORDERED.

Dated:   July 1, 2016

SENIOR DISTRICT JUDGE

---

[7] Upon receipt of the Rule 41 documents, the Court intends to dismiss Martin and its counterclaims from this case.

10