1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    **GARY COPPOLA, et al.,**                      **CASE NO. 1:11-CV-1257  AWI BAM**

9              **Plaintiffs**

10            **v.**                                 **ORDER VACATING JULY 11, 2016
                                                     HEARING DATE AND ORDER ON
11   **GREGORY SMITH, et al.,**                      **VISALIA UNIFIED SCHOOL
                                                     DISTRICT'S  MOTION TO APPROVE
12            **Defendants**                         SETTLEMENT**

13                                                   (Doc. No. 415)

14   _____

15   **AND RELATED CLAIMS**

16          This is an environmental law case that arises from the chemical contamination of property

17   surrounding a dry cleaning business in Visalia, California.  Defendant Visalia Unified School

18   District ("VUSD") has filed a motion to approve settlement and for the Court to hold that the

19   settlement is in "good faith" under California Code of Civil Procedure §§ 877 and 877.6

20   (hereinafter "§ 877" and "§ 877.6").  See Doc. No. 415.  Hearing on this motion is set for July 11,

21   2016.  The time to formally oppose VUSD's motion has now passed, and no party to this case has

22   filed an opposition.  The Court will vacate the July 11, 2016 hearing date and instead issue this

23   order, which grants VUSD's motion.

24

25                                      **BACKGROUND**

26          As explained in previous orders,[1] and as alleged in the Eighth Amended Complaint,

27   _____

28   [1] A more detailed description of the facts in this case may be found in *Coppola v. Smith*, 19 F.Supp.3d 960 (E.D. Cal.
     2014) and *Coppola v. Smith*, 935 F.Supp.2d 993 (E.D. Cal. 2013).

Plaintiffs own the real property and a dry cleaning business located at 717 W. Main Street ("717 W. Main"), Visalia, California.  VUSD operates an irrigation well ("the SV Well") and an auto shop, a wood shop, and custodial closets on the campus of Redwood High School in Visalia, California.  Redwood High School is approximately 0.5 miles away from 717 W. Main.

On October 28, 2009, the California Department of Toxic Substances Control ("DTSC") informed Plaintiffs that it was investigating the occurrence of PCE in the soil and groundwater at 717 W. Main.  It was later determined that the soil and groundwater both at and near 717 W. Main were contaminated with PCE.

In June 2011, Plaintiffs and the DTSC entered into a Consent Order that *inter alia* required Plaintiffs to conduct studies and clean-up efforts of the PCE plume at and near 717 W. Main.

Plaintiffs brought this lawsuit in 2011.  As to VUSD, Plaintiffs allege claims under 42 U.S.C. §§ 9607(a) and 9613(f) (the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")), public nuisance, public nuisance per se, dangerous condition of public property, and declaratory relief.  These claims are based on alleged releases of PCE attributable to the SV Well, auto shop, wood shop, and custodial closets at Redwood High School. VUSD has filed counterclaims against Plaintiffs for violation of CERCLA § 9613, equitable contribution, equitable indemnity, nuisance, trespass, and negligence.

## DEFENDANTS' MOTION

### *Defendant's Argument*

VUSD states that it and Plaintiffs have agreed to settle all claims between them in exchange for mutual waivers and releases, the payment by VUSD of $110,000.00, and VUSD's promise to work with DTSC regarding any investigation or remediation that may be associated with the Redwood High School campus.  However, the settlement is contingent upon the Court making a finding of "good faith" under § 877 and § 877.6.  VUSD argues that the settlement meets the *Tech-Bilt* factors, which show that the settlement is in good faith.  First, the amount that VUSD agrees to pay is within the reasonable range of its proportional responsibility.  Plaintiffs have incurred $600,000 in clean-up costs to date.  The amount of PCE that has been found in the

1   SV Well has been generally below the regulatory limit for drinking water, even though the SV

2   Well is not a drinking water well.  Further, there is only limited evidence that other operations at

3   Redwood High School contributed to any PCE contamination.  The $110,000 is the same amount

4   for which Cal Water settled this matter, and the limited CERCLA theory against Cal Water would

5   also limit the CERCLA theories applicable to the SV Well.  Second, VUSD has been unable to

6   locate applicate insurance coverage for this case.  Third, there has been no collusion, and the

7   settlement was reached after extensive negotiations.  No other party has indicated that they will

8   oppose this motion, and all parties were notified prior to filing this motion.  Fourth, it is

9   understood that a party should pay less in settlement than by way of a verdict.  Given these

10  considerations, the settlement is clearly within the ballpark of what is reasonable, and thus, is a

11  "good faith" settlement.

12          *Other Parties' Positions*

13          Defendants Paragon Cleaners, Inc. and Richard Laster have each filed formal notices of

14  non-opposition.  See Doc. Nos. 420, 422.  Plaintiffs have filed a notice of non-opposition and

15  expressly join VUSD's request to find that the settlement is in good faith.  See Doc. No. 418.

16  Plaintiffs point out that there are disputed factual issues, including the applicability of the

17  standards used by VUSD regarding regulatory contamination limits for PCE and the level of

18  contaminated water released from the SV Well.  Plaintiffs state that they have also provided

19  sampling data relating to the release of PCE at the Redwood High School auto shop, wood shop,

20  and custodial closets.  No other party has objected to or opposed VUSD's motion in any way.

21          *Relevant Terms of Settlement*

22          The settlement agreement settles all claims and issues between VUSD and Plaintiffs, as

23  raised in Plaintiffs' active complaint and VUSD's counterclaims.  See Doc. No. 415 at Ex. A at

24  p.2.  In part, the settlement provides that VUSD will pay Plaintiffs $110,000.00, Plaintiffs will

25  dismiss their complaint against VUSD, VUSD will dismiss its counterclaims against Plaintiffs,

26  and VUSD will work with the DTSC to investigate and remediate (if necessary) PCE

27  contamination at Redwood High School.  See id. at pp. 2-3.  There is a denial of liability, and the

28  parties are to bear their own attorneys' fees and costs.  The settlement is contingent upon the Court

3

finding that the settlement is made in good faith under *inter alia* § 877, § 877.6, and § 4 of the Uniform Contribution Among Tortfeasors Act, and the entry of a contribution and indemnity bar order.  See id. at p.2.

*Discussion*

1.    Method of Review

"When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."  Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) (emphasis added).  Section 877[2] is a substantive law (§ 877.6 is the procedural mechanism for implementing § 877), which the Court can apply.  See id.; Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990).  Therefore, § 877 will be applied to the state law claims at issue between VUSD and Plaintiffs.  See Mason and Dixon, 632 F.3d at 1060.

As for the CERCLA claims, one of CERCLA's "core principles" is to "foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation."  AmeriPride Servs. v. Texas Eastern Overseas, Inc., 782 F.3d 474, 486 (9th Cir. 2015); Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 971 (9th Cir. 2013).  Therefore, courts review settlements and generally enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate.  See Coppola v. Smith, 2016 U.S. Dist. LEXIS 80087, *15-*23 (E.D. Cal. June 20, 2016); City of San Diego v. National Steel & Shipbuilding Co., 2015 U.S. Dist. LEXIS 53078, *33-*36 (S.D. Cal. Apr. 21, 2015); Lewis v. Russell, 2012 U.S. Dist. LEXIS 161343, *11-*19 (E.D. Cal. Nov. 9, 2012); AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc., 2007 U.S. Dist. LEXIS 51364, *6-*7 (E.D. Cal. July 2, 2007); Patterson Envtl. Response Trust v. Autocare 2000, Inc., 2002 U.S. Dist. LEXIS 28323, *13-*25 (E.D. Cal. July 8, 2002).

---

[2] Sec. 877 reads in relevant part:  "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:   (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.  (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ."

The methodology used by federal courts in California to assess partial settlements and contribution bars is not always uniform.  Cf., e.g., National Steel¸ 2015 U.S. Dist. LEXIS 53078 at *34-*40 (separate analysis between state law and federal law) with Whitehurst v. Heinl, 2015 U.S. Dist. LEXIS 49147, *8-*15 (N.D. Cal. Apr. 14, 2015) (simply applying § 877 and § 877.6 to CERCLA claims without discussion of federal common law).  However, a number of courts consult § 877 and § 877.6, and either § 6 of the Uniform Comparative Fault Act ("UCFA")[3] or § 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA")[4] in analyzing settlement agreements in CERCLA cases.  E.g. Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*26; Heim v. Estate of Heim, 2014 U.S. Dist. LEXIS 46297, *12-*26 (N.D. Cal. Apr. 2, 2014); Tyco Thermal Controls LLC v. Redwood Industrial, 2010 U.S. Dist. LEXIS 91842, *11-*35, *41-*46 (N.D. Cal. Aug. 12, 2010); Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12.  The UCFA and the UCATA are "model acts . . . that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability."  AmeriPride, 782 F.3d at 483.  The UCFA and UCATA are consulted when allocating funds because CERCLA is silent on how to allocate settlement proceeds when the settlement is between private parties, i.e. not a settlement involving the United States or an individual State.  See id.; American Cyanamid Co. v. Capuano¸ 381 F.3d 6, 20 (1st Cir. 2004).

Courts consult § 877 and § 877.6 because litigants in California often expressly request such a finding, and if the finding is made, a contribution and indemnity bar is imposed by operation of law.  See Cal. Code Civ. P. § 877.6(c).  In other words, these statutes are the state law analog to the federal common law for approving settlements and imposing contribution bars.

---

[3] UCFA § 6 reads:  "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2."  See AmeriPride, 782 F.3d at 483 n.5.

[4] UCATA § 4 reads:  "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and  (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."  See AmeriPride, 782 F.3d at 484 n.6.

1    However, there is another reasons to consult § 877 and § 877.6.  Under these statutes, a settlement

2    is in "good faith" if it is "within the reasonable range of the settling tortfeasor's proportional share

3    of comparative liability for the plaintiff's injuries."  Tech-Bilt, Inc. v. Woodward-Clyde &

4    Assoc's, 38 Cal.3d 488, 499 (1985).  The factors generally considered in determining whether a

5    settlement is in "good faith" under § 877 and § 877.6 are similar to the facts highlighted by courts

6    in finding a CERCLA settlement to be fair, reasonable, and adequate.  Cf. National Steel, 2015

7    U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21,[5] and

8    Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17 with Tech-Bilt, 38 Cal.3d at 499;

9    Cahill v. San Diego Gas & Elec. Co., 194 Cal.App.4[th] 939, 959 (2011).  Both sets of

10   factors/considerations take into account the amount of the settlement, the settlor's proportionate

11   share of liability, claims and defenses, financial conditions, and the recognition that there is a

12   benefit to settling by saving resources and litigation expenses. See National Steel, 2015 U.S. Dist.

13   LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21, Patterson Envtl.,

14   2002 U.S. Dist. LEXIS 28323 at *13-*17; Tech-Bilt, 38 Cal.3d at 499.  Given the similarities, it is

15   difficult to envision a settlement that is in "good faith" but not fair, reasonable, and adequate, or

16   vice versa.  As such, in this case, the Court will examine and make findings regarding "good

17   faith" under § 877 and § 877.6 as part its determination of whether the settlement of the CERCLA

18   claims is fair, adequate, and reasonable. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *18; Heim,

19   2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12.

20        2.    Application

21             a.    Tech-Bilt Factors

22        Courts review the following nonexclusive factors from Tech-Bilt in order to determine if a

23   settlement is within a "reasonable range" and thus, in "good faith" under § 877 and § 877.6:   (1) a

24   rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2)

25   the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs;

26   (4) a recognition that a settlor should pay less in settlement than he would if he were found liable

27

28   _____
     [5] The Court notes that Lewis's analysis with respect to federal claims, although in a separate section, is very similar to
     its analysis of "good faith" with respect to state law claims.  See Lewis, 2012 U.S. Dist. LEXIS 161434 at *18-*21.

after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  See Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC, 632 F.3d 1056, 1064 (9th Cir. 2011); Bay Development, Ltd. v. Superior Ct., 50 Cal.3d 1012, 1027-28 (1990); Tech-Bilt, 38 Cal.3d at 499; Cahill, 194 Cal.App.4th at 959.  A party opposing a motion for good faith settlement has the burden of demonstrating the lack of good faith.  Tech-Bilt, 38 Cal.3d at  499–500; PacifiCare of California v. Bright Medical Associates, Inc., 198 Cal.App.4th 1451, 1465 (2011).  If a settlement is "in good faith," then § 877.6 bars claims for contribution and indemnity against the settling tortfeasor by the nonsettling tortfeasors.  See Cal. Code Civ. P. § 877.6(c); In re Heritage Bond Litig., 546 F.3d 667, 680-81 (9th Cir. 2008); Gackstetter v. Frawley, 135 Cal.App.4th 1257, 1274 (2006).

Here, with respect to Factors 1 and 2, the amount of VUSD's settlement appears reasonable in relation to its proportionate liability.[6]  There are twelve other defendants besides VUSD listed on the docket.  Further, VUSD has indicated that the PCE levels in the SV Well were generally below the regulatory limits for drinking water, and that the CERCLA theories concerning the SV Well would be limited to water that "entered" and "exited" the well.  Plaintiffs dispute the levels of PCE in the SV Well, but do not dispute that CERCLA liability would relate to PCE contaminated water that entered and exited the SV Well.  Similarly, although Plaintiffs state that they have samples that indicate PCE contamination, Plaintiffs do not challenge VUSD's representation that the evidence of PCE releases from the auto shop, the wood shop, and custodial closets is "limited."  The "limited" state of the evidence and liability theories regarding the SV Well suggest a limited recovery against VUSD.  Finally, the $110,000 figure is the same settlement figure that was approved for defendant Cal Water, and Cal Water's liability was based on a drinking water well that was located closer to 717 W. Main than was the SV Well.  $110,000 is a substantial portion of Plaintiffs' disclosed damages, approximately 18%.  Given the number of

---

[6] The Court notes that there are no cross-claims alleged against VUSD by any of the co-defendants.  Cf. PacifiCare, 198 Cal.App.4th at 1465  ("When evaluating whether the parties reached a settlement in good faith, a trial court must examine not only the settling tortfeasor's potential liability to the plaintiff, but also the settling tortfeasor's potential liability to all non-settling tortfeasors.").

1   defendants in this case, the amount paid by Cal Water, the percentage of Plaintiffs' disclosed

2   damages covered by the settlement, and the arguably limited evidence and bases for liability, the

3   $110,000 settlement appears to be a reasonable amount in relation to VUSD's potential

4   proportionate liability.  Therefore, Factors 1 and 2 favor approving the settlement.

5         With respect to Factor 3, there are three Plaintiffs in this case: two trusts and one natural

6   person (who is also the trustee of both trusts).  The Plaintiffs are represented by the same counsel,

7   appear to have family connections, own 717 W. Main, and have paid environmental clean-up

8   costs.  See Doc. No. 402.  Given the apparent close association and same legal representation of

9   Plaintiffs, there does not appear to be a significant risk of improper allocation of funds.  Therefore,

10  this factor is neutral.

11        As to Factor 4, settlement generally results in a partial savings of litigation costs, and saves

12  courts and juries time and other valuable resources.  This factor favors approving the settlement.

13        With respect to Factor 5, VUSD is not required to present evidence of its financial

14  condition or insurance status.  See Cahill, 194 Cal.App.4th at 968.  Nevertheless, VUSD has

15  represented that it does not have insurance that would cover liability for Plaintiffs' claims.  No

16  party has challenged this representation, nor has any party suggested that VUSD's financial

17  condition is such that it can and should pay a higher settlement amount.  Given the absence of

18  insurance, especially when considered alongside the $110,000 paid by Cal Water and its insurer,

19  this factor favors approving the settlement.

20        Finally, as to Factor 6, no collusion is apparent.  Discovery has been on-going, both sides

21  are represented by competent counsel, and the parties represent that their negotiations were

22  vigorous and arm's length.  Critically, no defendant has objected to or opposed VUSD's motion in

23  any way.  In fact, as discussed above, some Defendants have filed formal notices of non-

24  opposition.  The absence of an opposition or objection from any other party is highly telling and is

25  clearly indicative of reasonableness and good faith.  This factor favors approval of the settlement.

26        In sum, *Tech-Bilt* factors 1, 2, 4, 5, and 6 weigh in favor of a finding of reasonableness and

27  good faith, while *Tech-Bilt* factor 3 is neutral.  The *Tech-Bilt* factors demonstrate that the

28  $110,000 settlement is "within the reasonable range of [VUSD's] proportional share of

1    comparative liability for the [Plaintiffs'] injuries." There is nothing before the Court to suggest

2    that the settlement is anything other than fair, reasonable, and adequate.  Therefore, the Court

3    concludes that the settlement is fair, adequate, and reasonable, and was made in good faith for

4    purposes of § 877 and § 877.6.  See Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*23; Heim,

5    2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12;

6    cf. Lewis, 2012 U.S. Dist. LEXIS 161434 at *11-*21 (conducting similar but separate analyses of

7    federal law and state law claims to approve settlement); Patterson Envtl., 2002 U.S. Dist. LEXIS

8    28323 at *18-*26 (same).  The Court will approve the settlement and enter a contribution and

9    indemnity bar order.  See Coppola, 2016 U.S. Dist. LEXIS 80087 at *15-*23; National Steel, 2015

10   U.S. Dist. LEXIS 53078 at *33-*36; Heim, 2014 U.S. Dist. LEXIS 46297 at *16-*26; Lewis,

11   2012 U.S. Dist. LEXIS 161343 at *11-*21; Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-

12   *12; Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*26.

13                              b.      Allocation of Settlement Funds

14           When a settlement is reached in a CERCLA contribution case such as this one, courts have

15   the discretion under 42 U.S.C. § 9613(f)(1) to determine the most equitable method of accounting

16   for settlements between private parties.  AmeriPride, 782 F.3d at 487.  Districts courts may utilize

17   either the "proportionate share approach" of § 6 of the UCFA or the "pro tanto approach" of § 4 of

18   the UCATA.  See id. at 483-87.

19           As part of the Court's order on defendant Cal Water's motion for good faith approval of

20   settlement, the Court determined that all settlements would be credited to the non-settling parties

21   through the pro tanto method.  See Coppola, 2016 U.S. Dist. LEXIS 80087 at *23-*26.  The pro

22   tanto method is the method of § 877 and § 4 of UCATA, and the settlement in this case is

23   dependent upon approval under those laws.  See Doc. No. 415 at Ex. A at p.2.  Moreover, once a

24   court determines the method by which a settlement is accounted for between the non-settling

25   defendants, that approach should be utilized throughout the litigation.  See AmeriPride, 782 F.3d

26   at 488.  Therefore, consistent with *AmeriPride* and the reasoning and conclusion of the Court's

27   order on Cal Water's motion, the proceeds of this settlement shall be credited to the non-settling

28   parties through the pro tanto approach. See id; Coppola, 2016 U.S. Dist. LEXIS 80087 at *23-*26.

1

## **ORDER**

2          Accordingly, IT IS HEREBY ORDERED that:

3    1.    The July 11, 2016 hearing date is VACATED;

4    2.    VUSD's motion for good faith approval of the settlement agreement (Doc. No. 415) is

5          GRANTED;

6    3.    Under California Code of Civil Procedure §§ 877 and 877.6, and § 4 of the UCATA, the

7          settlement agreement (Ex. A to Doc. No. 415) is in "good faith" and is a fair, adequate, and

8          reasonable settlement;

9    4.    Once notice is provided to the Court that the $110,000 has been paid by VUSD to

10         Plaintiffs, no contribution or indemnity claims against VUSD arising out of the Plaintiffs'

11         Eighth Amended Complaint or VUSD's counterclaims will be allowed;

12   5.    The proceeds of this settlement will be accounted for in relation to non-settling parties

13         through the pro tanto approach of UCATA; and

14   6.    Within the time frame contemplated by the settlement agreement (fifteen days from service

15         of this order), Plaintiffs and VUSD shall each file Rule 41 dismissal requests.[7]

16

17   IT IS SO ORDERED.

18   Dated:   July 1, 2016                         _____

19                                                SENIOR  DISTRICT  JUDGE

20

21

22

23

24

25

26

27

28   _____

[7]Upon receipt of the Rule 41 documents, the Court intends to dismiss VUSD and its counterclaims from this case.