UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY COPPOLA, et al., <br><br> Plaintiffs <br><br> v. <br><br> GREGORY SMITH, et al., <br><br> Defendants <br><br> ──────────────────────── <br> AND RELATED CLAIMS | CASE NO. 1:11-CV-1257 AWI BAM <br><br> **ORDER VACATING NOVEMBER 13, 2017 HEARING DATE AND ORDER GRANTING DEFENDANT PARAGON CLEANERS INC.'S MOTION TO APPROVE SETTLEMENT** <br><br> (Doc. No. 488) |

This is an environmental law case that arises from the chemical contamination of property surrounding a dry cleaning business in Visalia, California. Defendant Paragon Cleaners, Inc. ("Paragon") has filed a motion to approve settlement and for the Court to hold that the settlement is in "good faith" under California Code of Civil Procedure §§ 877 and 877.6 (hereinafter "§ 877" and "§ 877.6"). See Doc. No. 488. On October 4, 2017, the Court ordered all parties to file either a notice of non-opposition or a notice of intent to oppose Paragon's motion. On October 10 and October 11, 2017, all remaining parties filed notices of non-opposition. See Doc. Nos. 494 to 503. For the reasons that follow, Paragon's motion will be granted.

**BACKGROUND**

As explained in prior orders,[1] Plaintiffs own the real property and a dry cleaning business located at 717 West Main Street ("717 W. Main"), Visalia, California. Paragon currently owns and operates a dry cleaning business located at 119 S. West St., Visalia, California. 119 S. Willis is located less than 0.1 miles from 717 W. Main.

On October 28, 2009, the California Department of Toxic Substances Control ("DTSC") informed Plaintiffs that it was investigating the occurrence of PCE in the soil and groundwater at 717 W. Main. It was later determined that the soil and groundwater both at and near 717 W. Main was contaminated with PCE.

In June 2011, Plaintiffs and the DTSC entered into a Consent Order that *inter alia* required Plaintiffs to conduct studies and clean-up efforts regarding the PCE plume at and near 717 W. Main.

Plaintiffs brought this lawsuit in 2011, and currently alleges in the Eighth Amended Complaint that Paragon was the owner and operator of the dry cleaning facility at 119 S. Willis at a time when PCE and other chemicals were released into the environment. Plaintiffs allege that Paragon was in sufficient control of 119 S. Willis to know about the use of PCE and prevent releases of PCE into the environment. Plaintiffs seek damages, contribution, and indemnification from Paragon associated with the PCE soil and groundwater contamination and cleanup.

Plaintiffs bring claims against Paragon under 42 U.S.C. §§ 9607(a) and 9613(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and for declaratory relief, trespass, and nuisance. Paragon has counter-claims against Plaintiffs and cross-claims against the Nash Parties and is a cross-defendant to claims brought by the Nash Parties.

**DEFENDANTS' MOTION**

*Defendant's Argument*

Paragon explains that remaining parties participated in extensive mediation efforts that

---

[1] A more detailed description of the facts in this case may be found in Coppola v. Smith, 19 F.Supp.3d 960 (E.D. Cal. 2014) and Coppola v. Smith, 935 F.Supp.2d 993 (E.D. Cal. 2013).

2

resulted in a global settlement.  As part of that agreement, Defendants Richard Laster (the former owner of the dry cleaning facility at 119 S. Willis) and the Nash Parties have agreed to contribute a total of $685,000 to remediate 119 S. Willis.[2]  Paragon explains that Laster has also expended about $1.3 million in investigative costs, including a 90-day soil vapor extraction pilot study that demonstrated successful clean-up of PCE.  That study shows that soil-vapor-extraction is the appropriate remediation technique to utilize at 119 S. Willis.  Paragon explains that it is not making a monetary contribution to the global settlement because, when Paragon acquired 119 S. Willlis in 1997, it had a professional waste hauler remove all waste products, separator water, etc. for PCE, and PCE was not released or discharged on the property or into the sewer lateral.  In 2008, Paragon discontinued its use of PCE.  Contamination at 119 S. Willis has not been traced to Paragon, and there is no evidence that Paragon contributed in any way to the contamination at 119 S. Willis.  Further, Paragon states that it is a small business, has no available insurance assets, and that the cost of litigation has been a burden to it.  Paragon argues that the settlement is fair and equitable, was negotiated with experienced counsel, was not collusive, and should be deemed a good faith settlement under § 877.

*Other Parties' Positions*

As stated above, all remaining parties have filed notices of non-opposition to Paragon's motion.

*Relevant Terms of Settlement*

According to counsel, the global settlement agreement provides that 119 S. Willis will be remediated with funds provided by Laster and the Nash Parties.  Laster will contribute $275,000 and the "Nash Parties" will contribute $610,000.00.  The Nash Parties are also responsible for past and future DTSC oversight costs (as will be determined by DTSC) related to both 119 S. Willis and 717 W. Main.[3]  Payment of the $275,000 from Laster is contingent upon Laster obtaining a dismissal with prejudice against him.

---

[2] The parties refer to 119 S. Willis and the relevant area as "the Paragon Cleaners Site."  The Court will simply refer to that area by the street address, 119 S. Willis.

[3] With respect to 717 W. Main, the global settlement provides that Plaintiffs and the City of Visalia are responsible for funding the remediation of that site.

3

*Discussion*

1. <u>Method of Review</u>

"When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law *to the state law claims*." <u>Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC</u>, 632 F.3d 1056, 1060 (9th Cir. 2011) (emphasis added). Section 877[4] is a substantive law (§ 877.6 is the procedural mechanism for implementing § 877), which the Court can apply. <u>See</u> <u>id.</u>; <u>Federal Sav. & Loan Ins. Corp. v. Butler</u>, 904 F.2d 505, 511 (9th Cir. 1990). Therefore, § 877 will be applied to the state law claims at issue between Martin and Plaintiffs. <u>See</u> <u>Mason and Dixon</u>, 632 F.3d at 1060.

As for the CERCLA claims, one of CERCLA's "core principles" is to "foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation." <u>AmeriPride Servs. v. Texas Eastern Overseas, Inc.</u>, 782 F.3d 474, 486 (9th Cir. 2015); <u>Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.</u>, 710 F.3d 946, 971 (9th Cir. 2013). Therefore, courts review settlements and generally enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate. <u>See</u> <u>Coppola v. Smith</u>, 2016 U.S. Dist. LEXIS 86277, *16-*24 (E.D. Cal. July 1, 2016); <u>City of San Diego v. National Steel & Shipbuilding Co.</u>, 2015 U.S. Dist. LEXIS 53078, *33-*36 (S.D. Cal. Apr. 21, 2015); <u>Lewis v. Russell</u>, 2012 U.S. Dist. LEXIS 161343, *11-*19 (E.D. Cal. Nov. 9, 2012); <u>AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc.</u>, 2007 U.S. Dist. LEXIS 51364, *6-*7 (E.D. Cal. July 2, 2007); <u>Patterson Envtl. Response Trust v. Autocare 2000, Inc.</u>, 2002 U.S. Dist. LEXIS 28323, *13-*25 (E.D. Cal. July 8, 2002).

The methodology used by federal courts in California to assess partial settlements and contribution bars is not always uniform. <u>Cf., e.g.</u>, <u>National Steel</u>¸ 2015 U.S. Dist. LEXIS 53078 at *34-*40 (separate analysis between state law and federal law) <u>with</u> <u>Whitehurst v. Heinl</u>, 2015 U.S.

---

[4] Sec. 877 reads in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater. (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ."

4

Dist. LEXIS 49147, *8-*15 (N.D. Cal. Apr. 14, 2015) (simply applying § 877 and § 877.6 to CERCLA claims without discussion of federal common law). However, a number of courts consult § 877 and § 877.6, and either § 6 of the Uniform Comparative Fault Act ("UCFA")[5] or § 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA")[6] in analyzing settlement agreements in CERCLA cases. E.g. Coppola, 2016 U.S. Dist. LEXIS 86277 at *16-*25; Heim v. Estate of Heim, 2014 U.S. Dist. LEXIS 46297, *12-*26 (N.D. Cal. Apr. 2, 2014); Tyco Thermal Controls LLC v. Redwood Industrial, 2010 U.S. Dist. LEXIS 91842, *11-*35, *41-*46 (N.D. Cal. Aug. 12, 2010); Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12. The UCFA and the UCATA are "model acts . . . that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability." AmeriPride, 782 F.3d at 483. The UCFA and UCATA are consulted when allocating funds because CERCLA is silent on how to allocate settlement proceeds when the settlement is between private parties, i.e. not a settlement involving the United States or an individual State. See id.; American Cyanamid Co. v. Capuano, 381 F.3d 6, 20 (1st Cir. 2004).

Courts consult § 877 and § 877.6 because litigants in California often expressly request such a finding, and if the finding is made, a contribution and indemnity bar is imposed by operation of law. See Cal. Code Civ. P. § 877.6(c). In other words, these statutes are the state law analog to the federal common law for approving settlements and imposing contribution bars. However, there is another reasons to consult § 877 and § 877.6. Under these statutes, a settlement is in "good faith" if it is "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Tech-Bilt, Inc. v. Woodward-Clyde &

---

[5] UCFA § 6 reads: "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2." See AmeriPride, 782 F.3d at 483 n.5.

[6] UCATA § 4 reads: "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." See AmeriPride, 782 F.3d at 484 n.6.

Assoc's, 38 Cal.3d 488, 499 (1985). The factors generally considered in determining whether a settlement is in "good faith" under § 877 and § 877.6 are similar to the facts highlighted by courts in finding a CERCLA settlement to be fair, reasonable, and adequate. Cf. National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21,[7] and Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17 with Tech-Bilt, 38 Cal.3d at 499; Cahill v. San Diego Gas & Elec. Co., 194 Cal.App.4th 939, 959 (2011). Both sets of factors/considerations take into account the amount of the settlement, the settlor's proportionate share of liability, claims and defenses, financial conditions, and the recognition that there is a benefit to settling by saving resources and litigation expenses. See National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21, Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17; Tech-Bilt, 38 Cal.3d at 499. Given the similarities, it is difficult to envision a settlement that is in "good faith" but not fair, reasonable, and adequate, or *vice versa*. As such, the Court will examine and make findings regarding "good faith" under § 877 and § 877.6 as part its determination of whether the settlement of the CERCLA claims is fair, adequate, and reasonable. See Coppola, 2016 U.S. Dist. LEXIS 86277 at *20; Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12.

   2. Application

      a. *Tech-Bilt* Factors

Courts review the following nonexclusive factors from *Tech-Bilt* in order to determine if a settlement is within a "reasonable range" and thus, in "good faith" under § 877 and § 877.6:  (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. See Mason and Dixon, 632 F.3d at 1064; Bay Development, Ltd. v. Superior

---

[7] The Court notes that *Lewis*'s analysis with respect to federal claims, although in a separate section, is very similar to its analysis of "good faith" with respect to state law claims. See Lewis, 2012 U.S. Dist. LEXIS 161434 at *18-*21.

Ct., 50 Cal.3d 1012, 1027-28 (1990); Tech-Bilt, 38 Cal.3d at 499; Cahill, 194 Cal.App.4th at 959. A party opposing a motion for good faith settlement has the burden of demonstrating the lack of good faith. Tech-Bilt, 38 Cal.3d at 499–500; PacifiCare of California v. Bright Medical Associates, Inc., 198 Cal.App.4th 1451, 1465 (2011). If a settlement is "in good faith," then § 877.6 bars claims for contribution and indemnity against the settling tortfeasor by the nonsettling tortfeasors. See Cal. Code Civ. P. § 877.6(c); In re Heritage Bond Litig., 546 F.3d 667, 680-81 (9th Cir. 2008); Gackstetter v. Frawley, 135 Cal.App.4th 1257, 1274 (2006).

Here, with respect to Factors 1 and 2, the global settlement agreement appears to place the responsibility for remediating 119 S. Willis on Laster and the Nash Parties. Between these two parties, $885,000 has been pledged. The declarations of Laster and Paragon's counsel[8] and counsel for the "Nash Parties" both indicate that this sum should be "more than sufficient" to remediate 119 S. Willis. See Gualco Dec. ¶ 8; Williams Dec. ¶ 7. It is true that Paragon is not contributing monetarily to the settlement. However, the unrebutted representations of counsel indicate that, when Paragon purchased 119 S. Willis, it hired a professional hauler to deal with PCE, Paragon did not cause a release or discharge of PCE from the facility, nothing links the chemical contamination at 119 S. Willis to conduct by Paragon, and there is no evidence that Paragon caused a discharge or release of PCE. Accepting these unrebutted representations as true, Paragon's percentage of fault or liability equitably would be at or near zero. Moreover, the respective counsels for the Nash Parties and Laster and Paragon each declare that, under the facts of this case and in light of their decades of combined experience, the settlement represent a reasonable share of the parties' proportionate share of liability. See Gualco Dec. ¶ 9; Williams Dec. ¶ 8. Considering the funds that have already been expended by Laster, that a remediation of the property will be obtained based on the funds pledged by other parties, the absence of any apparent "blameworthy" conduct by Paragon, and the experience of counsel and their knowledge of this case, Factors 1 and 2 favor approving the settlement.

With respect to Factor 3, there are three Plaintiffs in this case: two trusts and one natural person (who is also the trustee of both trusts). The Plaintiffs are represented by the same counsel,

---

[8] Laster and Paragon are represented by the same counsel.

appear to have family connections, own 717 W. Main, and paid environmental clean-up costs. See Doc. No. 402. Given the apparent close association and same legal representation of Plaintiffs, there does not appear to be a significant risk of improper allocation of funds. Therefore, this factor is neutral.

As to Factor 4, settlement generally results in a partial saving of litigation costs, and saves courts and juries time and other valuable resources. This factor favors approving the settlement.

With respect to Factor 5, Paragon is not required to present evidence of its financial condition or insurance status. See Cahill, 194 Cal.App.4th at 968. No party disputes Paragon's representations that it is a small business that does not have applicable insurance and that it has been burdened by this litigation. Thus, this factor favors the settlement.

Finally, as to Factor 6, no collusion is apparent. All remaining parties are represented by experienced and competent counsel. All remaining parties engaged in extensive and lengthy mediations involving a neutral mediator. There is no reason to believe that the settlement was not vigorously negotiated at arm's-length. More importantly, no party has objected to or opposed Paragon's motion in any way, rather all other parties expressly do not oppose its motion. The absence of an opposition or objection from any other party is highly telling and is clearly indicative of reasonableness and good faith. This factor strongly favors approval of the settlement.

In sum, *Tech-Bilt* factors 1, 2, 4, 5, and 6 weigh in favor of a finding of reasonableness and good faith, while *Tech-Bilt* factor 3 is neutral. The *Tech-Bilt* factors demonstrate that Paragon's non-monetary obligation under the settlement is "within the reasonable range of [his] proportional share of comparative liability for the [Plaintiffs' and the Nash Parties'] injuries." There is nothing before the Court to suggest that the settlement is anything other than fair, reasonable, and adequate. Therefore, the Court concludes that the settlement is fair, adequate, and reasonable, and was made in good faith for purposes of § 877 and § 877.6. See Coppola, 2016 U.S. Dist. LEXIS 86277 at *20-*25; Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12; cf. Lewis, 2012 U.S. Dist. LEXIS 161434 at *11-*21 (conducting similar but separate analyses of federal law and state law claims to approve settlement); Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *18-*26 (same). The Court will approve the settlement and enter

a contribution and indemnity bar order. See National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36; Heim, 2014 U.S. Dist. LEXIS 46297 at *16-*26; Lewis, 2012 U.S. Dist. LEXIS 161343 at *11-*21; Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12; Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*26.

          b.      Allocation of Settlement Funds

When a settlement is reached in a CERCLA contribution case such as this one, courts have the discretion under 42 U.S.C. § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties. AmeriPride, 782 F.3d at 487. Districts courts may utilize either the "proportionate share approach" of § 6 of the UCFA or the "pro tanto approach" of § 4 of the UCATA. See id. at 483-87.

In this case, the Court has previously approved good faith settlements for former defendants Cal Water, Martin & Martin Properties, and the Visalia Unified School District. See Doc. Nos. 424, 425, 426. In each of those orders, the Court determined that the settlements would be credited to the non-settling parties through the pro tanto method. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *23-*26. The pro tanto method is the method of § 877 and § 4 of UCATA. Once a court determines the method by which a settlement is accounted for between the non-settling defendants, that approach should be utilized throughout the litigation. See AmeriPride, 782 F.3d at 488. Therefore, consistent with *AmeriPride* and the reasoning and conclusion of the Court's order on the motions of Cal Water, Martin & Martin Properties, and the Visalia Unified School District, the proceeds of this settlement shall be credited to the non-settling parties through the pro tanto approach. See id; Coppola, 2016 U.S. Dist. LEXIS 82667 at *25.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The November 13, 2017 hearing date is VACATED;
2. Paragon Cleaners, Inc.'s motion for good faith approval of the settlement agreement (Doc. No. 488) is GRANTED;

3. Under California Code of Civil Procedure §§ 877 and 877.6, and § 4 of the UCATA (for purposes of 42 U.S.C. § 9613(f)(1)), the settlement agreement reached by Paragon Cleaners, Inc. with Plaintiffs, Richard Laster, and the Nash Parties is in "good faith" and is a fair, adequate, and reasonable settlement;

4. No contribution or indemnity claims against Paragon Cleaners, Inc. arising out of the Plaintiffs' Eighth Amended Complaint or any related cross-claims or counterclaims will be allowed;

5. Within fifteen (15) days of service of this order:

    a. Plaintiffs shall file a voluntary dismissal with prejudice of Paragon Cleaners, Inc. from this case;

    b. Paragon Cleaners, Inc. shall file a voluntary dismissal with prejudice of its counterclaims against Plaintiffs;

    c. Paragon Cleaners, Inc. shall file a voluntary dismissal with prejudice of its cross-claims against the Nash Parties;[9]

    d. The Nash Parties shall file a voluntary dismissal with prejudice of their cross-claims against Paragon Cleaners, Inc.; and

6. The proceeds of this settlement will be accounted for in relation to non-settling parties through the pro tanto approach of UCATA.

IT IS SO ORDERED.

Dated: October 13, 2017

                                              SENIOR DISTRICT JUDGE

---

[9] The "Nash Parties" are Nash Properties, LLC and David H. Nash and Richard P. Nash as the successor co-trustees of the Jan Higgins Nash Trust. See Doc. No. 489.