**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GARY COPPOLA, et al.,** | **CASE NO. 1:11-CV-1257 AWI BAM** |
| Plaintiffs | |
| v. | **ORDER VACATING NOVEMBER 13, 2017 HEARING DATE AND ORDER GRANTING DEFENDANT RICHARD LASTER'S MOTION TO APPROVE SETTLEMENT** |
| **GREGORY SMITH, et al.,** | |
| Defendants | |
| | (Doc. No. 487) |
| **AND RELATED CLAIMS** | |

This is an environmental law case that arises from the chemical contamination of property surrounding a dry cleaning business in Visalia, California. Defendant Richard Laster has filed a motion to approve settlement and for the Court to hold that the settlement is in "good faith" under California Code of Civil Procedure §§ 877 and 877.6 (hereinafter "§ 877" and "§ 877.6"). See Doc. No. 487. On October 4, 2017, the Court ordered all remaining parties to file either a notice of non-opposition or a notice of intent to oppose Laster's motion. On October 10 and October 11, 2017, all remaining parties filed notices of non-opposition. See Doc. Nos. 494 to 503. For the reasons that follow, Laster's motion will be granted.

**BACKGROUND**

As explained in prior orders,[1] Plaintiffs own the real property and a dry cleaning business located at 717 W. Main St., Visalia, California. Laster is the former owner of Paragon Cleaners, a dry cleaning operation that is located at 119 S. Willis St., Visalia, California. 119 S. Willis is within 0.1 miles of 717 W. Main.

On October 28, 2009, the California Department of Toxic Substances Control ("DTSC") informed Plaintiffs that it was investigating the occurrence of PCE in the soil and groundwater at 717 W. Main. It was later determined that the soil and groundwater both at and near 717 W. Main was contaminated with PCE.

In June 2011, Plaintiffs and the DTSC entered into a Consent Order that *inter alia* required Plaintiffs to conduct studies and clean-up efforts regarding the PCE plume at and near 717 W. Main.

Plaintiffs brought this lawsuit in 2011, and currently alleges in the Eighth Amended Complaint that releases of PCE and other chemicals occurred from 119 S. Willis at a time when Laster owned and controlled 119 S. Willis. Plaintiffs allege that the Laster was in sufficient control of 119 S. Willis to know about the use of PCE and prevent releases of PCE into the environment. Plaintiffs seek damages, contribution, and indemnification from Laster associated with the PCE soil and groundwater contamination and cleanup.

Plaintiffs bring claims against Laster under 42 U.S.C. §§ 9607(a) and 9613(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and for declaratory relief, trespass, and nuisance. Laster has counterclaims against Plaintiffs and cross-claims against the Nash Parties, and is a cross-defendant to claims brought by the Nash Parties.

**DEFENDANTS' MOTION**

*Defendant's Argument*

Laster explains that the remaining parties participated in extensive mediation efforts that

---

[1] A more detailed description of the facts in this case may be found in Coppola v. Smith, 19 F.Supp.3d 960 (E.D. Cal. 2014) and Coppola v. Smith, 935 F.Supp.2d 993 (E.D. Cal. 2013).

resulted in a global settlement. As part of that settlement, Laster agreed to contribute $275,000 to the remediation of 119 S. Willis.[2] The $275,000 is currently held in trust by his counsel, but will be transferred to a remediation fund for 119 S. Willis. The remediation fund will be administered by the Nash Parties' counsel, and will be used to conduct remediation, execute contracts, and pay necessary DTSC oversight costs. The Nash Parties will also contribute $610,000 to the remediation of 119 S. Willis. Laster explains that he has already expended about $1.3 million on investigative and monitoring costs for 119 S. Willis, including a 90-day soil vapor extraction pilot study that demonstrated successful clean-up of PCE. That study shows that soil-vapor-extraction is the appropriate remediation technique to utilize at 119 S. Willis. However, payment of the $275,000 is contingent upon approval of the good faith motion. Laster argues that the settlement is fair and equitable, was negotiated with experienced counsel, was not collusive, and should be deemed a good faith settlement under § 877.

*Other Parties' Positions*

As stated above, all remaining parties have filed notices of non-opposition to the Laster's motion.

*Relevant Terms of Settlement*

According to counsel, the global settlement agreement provides that 119 S. Willis will be remediated with funds provided by Laster and the Nash Parties. Laster will provide $275,000 in funding, and the "Nash Parties" will contribute $610,000.00. The "Nash Parties" are also responsible for funding approximately $30,000 in future DTSC oversight costs and a portion of $175,000 past oversight costs related to both 119 S. Willis and 717 W. Main, as determined by DTSC.[3] See Doc. No. 487.

*Discussion*

1. Method of Review

"When a district court . . . hears state law claims based on supplemental jurisdiction, the

---

[2] The parties refer to 119 S. Willis and the relevant area as "the Paragon Cleaners Site." The Court will simply refer to that area by the street address, 119 S. Willis.

[3] With respect to 717 W. Main, counsel represents that the global settlement provides for Plaintiffs and the City of Visalia to fund the remediation efforts for this site.

court applies state substantive law *to the state law claims*." Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) (emphasis added).  Section 877[4] is a substantive law (§ 877.6 is the procedural mechanism for implementing § 877), which the Court can apply.  See id.; Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990). Therefore, § 877 will be applied to the state law claims at issue between Martin and Plaintiffs.  See Mason and Dixon, 632 F.3d at 1060.

As for the CERCLA claims, one of CERCLA's "core principles" is to "foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation."  AmeriPride Servs. v. Texas Eastern Overseas, Inc., 782 F.3d 474, 486 (9th Cir. 2015); Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 971 (9th Cir. 2013).  Therefore, courts review settlements and generally enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate.  See Coppola v. Smith, 2016 U.S. Dist. LEXIS 86277, *16-*24 (E.D. Cal. July 1, 2016); City of San Diego v. National Steel & Shipbuilding Co., 2015 U.S. Dist. LEXIS 53078, *33-*36 (S.D. Cal. Apr. 21, 2015); Lewis v. Russell, 2012 U.S. Dist. LEXIS 161343, *11-*19 (E.D. Cal. Nov. 9, 2012); AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc., 2007 U.S. Dist. LEXIS 51364, *6-*7 (E.D. Cal. July 2, 2007); Patterson Envtl. Response Trust v. Autocare 2000, Inc., 2002 U.S. Dist. LEXIS 28323, *13-*25 (E.D. Cal. July 8, 2002).

The methodology used by federal courts in California to assess partial settlements and contribution bars is not always uniform.  Cf., e.g., National Steel, 2015 U.S. Dist. LEXIS 53078 at *34-*40 (separate analysis between state law and federal law) with Whitehurst v. Heinl, 2015 U.S. Dist. LEXIS 49147, *8-*15 (N.D. Cal. Apr. 14, 2015) (simply applying § 877 and § 877.6 to CERCLA claims without discussion of federal common law).  However, a number of courts

---

[4] Sec. 877 reads in relevant part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:  (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.  (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ."

4

consult § 877 and § 877.6, and either § 6 of the Uniform Comparative Fault Act ("UCFA")[5] or § 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA")[6] in analyzing settlement agreements in CERCLA cases. E.g. Coppola, 2016 U.S. Dist. LEXIS 86277 at *16-*25; Heim v. Estate of Heim, 2014 U.S. Dist. LEXIS 46297, *12-*26 (N.D. Cal. Apr. 2, 2014); Tyco Thermal Controls LLC v. Redwood Industrial, 2010 U.S. Dist. LEXIS 91842, *11-*35, *41-*46 (N.D. Cal. Aug. 12, 2010); Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12. The UCFA and the UCATA are "model acts . . . that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability." AmeriPride, 782 F.3d at 483. The UCFA and UCATA are consulted when allocating funds because CERCLA is silent on how to allocate settlement proceeds when the settlement is between private parties, i.e. not a settlement involving the United States or an individual State. See id.; American Cyanamid Co. v. Capuano, 381 F.3d 6, 20 (1st Cir. 2004).

Courts consult § 877 and § 877.6 because litigants in California often expressly request such a finding, and if the finding is made, a contribution and indemnity bar is imposed by operation of law. See Cal. Code Civ. P. § 877.6(c). In other words, these statutes are the state law analog to the federal common law for approving settlements and imposing contribution bars. However, there is another reasons to consult § 877 and § 877.6. Under these statutes, a settlement is in "good faith" if it is "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Tech-Bilt, Inc. v. Woodward-Clyde & Assoc's, 38 Cal.3d 488, 499 (1985). The factors generally considered in determining whether a settlement is in "good faith" under § 877 and § 877.6 are similar to the facts highlighted by courts

---

[5] UCFA § 6 reads: "A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2." See AmeriPride, 782 F.3d at 483 n.5.

[6] UCATA § 4 reads: "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." See AmeriPride, 782 F.3d at 484 n.6.

in finding a CERCLA settlement to be fair, reasonable, and adequate. Cf. National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21,[7] and Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17 with Tech-Bilt, 38 Cal.3d at 499; Cahill v. San Diego Gas & Elec. Co., 194 Cal.App.4th 939, 959 (2011). Both sets of factors/considerations take into account the amount of the settlement, the settlor's proportionate share of liability, claims and defenses, financial conditions, and the recognition that there is a benefit to settling by saving resources and litigation expenses. See National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36, Lewis, 2012 U.S. Dist. LEXIS 161343 at *12-*21, Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *13-*17; Tech-Bilt, 38 Cal.3d at 499. Given the similarities, it is difficult to envision a settlement that is in "good faith" but not fair, reasonable, and adequate, or *vice versa*. As such, the Court will examine and make findings regarding "good faith" under § 877 and § 877.6 as part its determination of whether the settlement of the CERCLA claims is fair, adequate, and reasonable. See Coppola, 2016 U.S. Dist. LEXIS 86277 at *20; Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12.

    2.    <u>Application</u>

        a.    <u>*Tech-Bilt* Factors</u>

Courts review the following nonexclusive factors from *Tech-Bilt* in order to determine if a settlement is within a "reasonable range" and thus, in "good faith" under § 877 and § 877.6: (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. See Mason and Dixon, 632 F.3d at 1064; Bay Development, Ltd. v. Superior Ct., 50 Cal.3d 1012, 1027-28 (1990); Tech-Bilt, 38 Cal.3d at 499; Cahill, 194 Cal.App.4th at 959. A party opposing a motion for good faith settlement has the burden of demonstrating the lack of

---

[7] The Court notes that *Lewis*'s analysis with respect to federal claims, although in a separate section, is very similar to its analysis of "good faith" with respect to state law claims. See Lewis, 2012 U.S. Dist. LEXIS 161434 at *18-*21.

good faith. Tech-Bilt, 38 Cal.3d at 499–500; PacifiCare of California v. Bright Medical Associates, Inc., 198 Cal.App.4th 1451, 1465 (2011). If a settlement is "in good faith," then § 877.6 bars claims for contribution and indemnity against the settling tortfeasor by the nonsettling tortfeasors. See Cal. Code Civ. P. § 877.6(c); In re Heritage Bond Litig., 546 F.3d 667, 680-81 (9th Cir. 2008); Gackstetter v. Frawley, 135 Cal.App.4th 1257, 1274 (2006).

Here, with respect to Factors 1 and 2, the global settlement agreement appears to place the responsibility for remediating 119 S. Willis on Laster and the Nash Parties. Between these two parties, $885,000 has been pledged. The declarations of counsel Laster and counsel for the Nash Parties both indicate that this sum should be "more than sufficient" to remediate 119 S. Willis. See Gualco Dec. ¶ 8; Williams Dec. ¶ 7. Although the Nash Parties are contributing $335,000 more than Laster, Laster has already spent $1.3 million related to monitoring and investigation of 119 S. Willis. Further, the Nash Parties have agreed to pay significant sums of past and future DTSC oversight costs related to both 119 S. Willis and 717 W. Main. Finally, the respective counsels for Laster and the Nash Parties both declare that, under the facts of this case and in light of their decades of combined experience, the funds pledged represent a reasonable share of the parties' proportionate share of liability. See Gualco Dec. ¶ 9; Williams Dec. ¶ 8. Considering the funds pledged by Lester, the funds from Laster that have already been expended, that a remediation of the property will be obtained, and the experience of counsel and their knowledge of this case, Factors 1 and 2 favor approving the settlement.

With respect to Factor 3, there are three Plaintiffs in this case: two trusts and one natural person (who is also the trustee of both trusts). The Plaintiffs are represented by the same counsel, appear to have family connections, own 717 W. Main, and paid environmental clean-up costs. See Doc. No. 402. Given the apparent close association and same legal representation of Plaintiffs, there does not appear to be a significant risk of improper allocation of funds. Therefore, this factor is neutral.

As to Factor 4, settlement generally results in a partial saving of litigation costs, and saves courts and juries time and other valuable resources. This factor favors approving the settlement.

With respect to Factor 5, Laster is not required to present evidence of his financial

condition or insurance status.  See Cahill, 194 Cal.App.4th at 968.  To the Court's understanding, Laster has never contended that his financial status should justify a lower settlement amount, and no party has suggested that any insurance companies associated with Laster should contribute larger sums to the settlement.  Cf. Long Beach Memorial Med. Ctr. v. Superior Ct., 172 Cal.App.4th 865, 874-75 (2010) (noting that being insolvent or underinsured or uninsured may support a lower settlement amount, these considerations did not apply where the settlement was 10% of available policy limits and the defendant was solvent).  This factor is neutral.

Finally, as to Factor 6, no collusion is apparent.  All remaining parties are represented by experienced and competent counsel.  All remaining parties engaged in extensive and lengthy mediations involving a neutral mediator.  There is no reason to believe that the settlement was not vigorously negotiated at arm's-length.  More importantly, no party has objected to or opposed Laster's motion in any way, rather all other parties expressly do not oppose his motion.  The absence of an opposition or objection from any other party is highly telling and is clearly indicative of reasonableness and good faith.  This factor strongly favors approval of the settlement.

In sum, *Tech-Bilt* factors 1, 2, 4, and 6 weigh in favor of a finding of reasonableness and good faith, while *Tech-Bilt* factors 3 and 5 are neutral.  The *Tech-Bilt* factors demonstrate that Laster's $275,000 settlement is "within the reasonable range of [his] proportional share of comparative liability for the [Plaintiffs' and the Nash Parties'] injuries."  There is nothing before the Court to suggest that the settlement is anything other than fair, reasonable, and adequate. Therefore, the Court concludes that the settlement is fair, adequate, and reasonable, and was made in good faith for purposes of § 877 and § 877.6.  See Coppola, 2016 U.S. Dist. LEXIS 86277 at *20-*25; Heim, 2014 U.S. Dist. LEXIS 46297 at *12-*26; Valley Indus., 2007 U.S. Dist. Lexis 51364 at *6-*12; cf. Lewis, 2012 U.S. Dist. LEXIS 161434 at *11-*21 (conducting similar but separate analyses of federal law and state law claims to approve settlement); Patterson Envtl., 2002 U.S. Dist. LEXIS 28323 at *18-*26 (same).  The Court will approve the settlement and enter a contribution and indemnity bar order.  See National Steel, 2015 U.S. Dist. LEXIS 53078 at *33-*36; Heim, 2014 U.S. Dist. LEXIS 46297 at *16-*26; Lewis, 2012 U.S. Dist. LEXIS 161343 at *11-*21; Valley Indus., 2007 U.S. Dist. LEXIS 51364 at *6-*12; Patterson Envtl., 2002 U.S. Dist.

8

LEXIS 28323 at *13-*26.

### b. Allocation of Settlement Funds

When a settlement is reached in a CERCLA contribution case such as this one, courts have the discretion under 42 U.S.C. § 9613(f)(1) to determine the most equitable method of accounting for settlements between private parties. AmeriPride, 782 F.3d at 487. Districts courts may utilize either the "proportionate share approach" of § 6 of the UCFA or the "pro tanto approach" of § 4 of the UCATA. See id. at 483-87.

In this case, the Court has previously approved good faith settlements for former defendants Cal Water, Martin & Martin Properties, and the Visalia Unified School District. See Doc. Nos. 424, 425, 426. In each of those orders, the Court determined that all settlements would be credited to the non-settling parties through the pro tanto method. See Coppola, 2016 U.S. Dist. LEXIS 80087 at *23-*26. The pro tanto method is the method of § 877 and § 4 of UCATA. See Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990); Coppola v. Smith, 2016 U.S. Dist. LEXIS 80087, *24 (E.D. Cal. June 20, 2016). Once a court determines the method by which a settlement is accounted for between the non-settling defendants, that approach should be utilized throughout the litigation. See AmeriPride, 782 F.3d at 488. Therefore, consistent with *AmeriPride* and the reasoning and conclusion of the Court's order on the motions of Cal Water, Martin & Martin Properties, and the Visalia Unified School District, the proceeds of this settlement shall be credited to the non-settling parties through the pro tanto approach. See id; Coppola, 2016 U.S. Dist. LEXIS 82667 at *25.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The November 13, 2017 hearing date is VACATED;
2. Richard Laster's motion for good faith approval of the settlement agreement (Doc. No. 487) is GRANTED;
3. Under California Code of Civil Procedure §§ 877 and 877.6, and § 4 of the UCATA (for purposes of 42 U.S.C. § 9613(f)(1)), the settlement agreement reached by Laster with

Plaintiffs, Paragon Cleaners, Inc., and the Nash Parties is in "good faith" and is a fair, adequate, and reasonable settlement;

4. Once Richard Laster has paid $275,000 to the Paragon Cleaners Reimbursement Fund, no contribution or indemnity claims against Richard Laster arising out of the Plaintiffs' Eighth Amended Complaint or any related cross-claims or counterclaims will be allowed;

5. Within fifteen (15) days of service of this order:

    a. Plaintiffs shall file a voluntary dismissal with prejudice of Richard Laster from this case;

    b. Richard Laster shall file a voluntary dismissal with prejudice of his counter-claims against Plaintiffs;

    c. Richard Laster shall file a voluntary dismissal with prejudice of his cross-claims against the Nash Parties;[8]

    d. The Nash Parties shall file a voluntary dismissal with prejudice of their cross-claims against Richard Laster; and

6. The proceeds of this settlement will be accounted for in relation to non-settling parties through the pro tanto approach of UCATA.

IT IS SO ORDERED.

Dated: __October 13, 2017__                _[signature]_
                                                          SENIOR DISTRICT JUDGE

---

[8] The "Nash Parties" are Nash Properties, LLC and David H. Nash and Richard P. Nash as the successor co-trustees of the Jan Higgins Nash Trust. See Doc. No. 489.