# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY COPPOLA, et al., <br> Plaintiffs <br> v. <br> GREGORY SMITH, et al., <br> Defendants <br> ─────────────────────── <br> AND RELATED CLAIMS | CASE NO. 1:11-CV-1257 AWI BAM <br><br> ORDER ON PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT <br><br> (Doc. No. 509) |

This is an environmental law case that arises from the chemical contamination of property surrounding a dry cleaning business in Visalia, California. Plaintiffs (collectively "Coppola") have brought suit against *inter alia* the City of Visalia ("the City"), and the City has brought a counterclaim against Coppola. Through a series of settlements, the only claims that remain in this case are those between Coppola and the City. Now pending before the Court is Coppola's motion to enforce a settlement agreement (the "Agreement") against the City. For the reasons that follow, Coppola's motion will be denied.

## **BACKGROUND**

There is a perchloroethylene ("PCE") (a chemical used in the dry cleaning industry) contamination plume in downtown Visalia. The California Department of Toxic Substance Control ("DTSC") cited Coppola for the release. After investigation, Coppola brought claims under CERCLA and state law against numerous individuals and entities, including the City. In a

nutshell, Coppola contends that the City's sewer system leaks, which resulted in a further release and disbursement of PCE, while the City contends that Coppola improperly released or discarded PCE into the sewers and the environment.

Following a rigorous round of Rule 12(b)(6) and Rule 56 motions, as well as voluntary settlement agreements and dismissals, in 2017, the remaining parties were Coppola, the City, Paragon Cleaners, Richard Laster, and "the Nash Parties." These remaining parties had previously engaged, and continued to engage, in complex and substantial mediation.

In January 2017, the Court gave partial effect to a stipulation by vacating all trial related dates and ordering the parties and their insurers to mediation. See Doc. Nos. 453, 457.

In March, April, and May, the parties informed the Court that they were close to a global settlement, requested that a status conference be postponed, and requested an order for further mediation. See Doc. Nos. 467, 469, 471. The Court granted the parties' requests. See Doc. No. 468, 470, 472.

On June 9, 2017, as part of a joint status report, the parties represented that they were close to a global settlement. See Doc. No. 473. The only remaining settlement issue was between Defendant Laster and his insurers. See id. The report noted that once an agreement was finalized, the City Council would have to give final approval. See id.

On July 31, 2017, the parties jointly informed the Court that the entire case had settled, the Agreement had been executed, and the only contingencies that remained involved parties other than the City. See Doc. No. 476. As part of this report, the City and Coppola advised the Court that they may proceed with the Agreement separately if the identified contingencies materialized. See id.

Sometime in August 2017, Coppola contends that the City for the first time advised them that it was having problems with its insurance carriers. See Doc. No. 509-1 at 4:8.

On August 28, 2017, the Court entered a stipulated order that set a combined settlement conference for this case and *Mission Linen Supply v. City of Visalia*, 1:15-cv-672 AWI EPG, despite the fact that the parties had a reached a global settlement in this case. See Doc. Nos. 479, 481. The stipulation particularly noted insurance coverage issues with respect to the City. See id.

2

The combined settlement conference was unsuccessful. However, the Court approved unopposed motions for good faith settlements on October 13, 2017.[1] See Doc. Nos. 504, 505, 506. These orders were based on the Agreement, and led to the dismissal of all claims between Coppola, Paragon Cleaners, Richard Laster, and the "Nash Parties." See Doc. No. 507.

**I.     PLAINTIFF'S MOTION**

*Plaintiff's Argument*

Coppola argues that, as the result of extensive multi-day mediations efforts, the City signed the Agreement, which resolved the remaining claims. As part of the Agreement, the City and Coppola would sign mutual releases, voluntarily dismiss all claims and counterclaims, bear their own costs and attorney's fees, and not admit liability, all in exchange for the City paying Coppola $300,000.00. The Agreement was executed in July 2017 by the City Manager and the City's counsel, following a representation in April 2017 by the City that it had obtained written confirmation from its insurance carriers to pay $300,000.00 without reference to any contingencies. Despite signing the Agreement in July 2017, the City has not funded the Agreement, but has instead stated that there are problems with its insurance carriers. The City's conduct has caused Coppola to delay in taking mandated remediation action with respect to the PCE plume. Coppola argues that they should not be prejudiced by the dispute between the City and its insurance carriers, given the representations by the City that it was ready and able to complete settlement and the fact that the City signed the Agreement and the DTSC's expressed desire to begin remediation. There are no disputed issues of fact, the terms of the Agreement are clear, and the passage of time is prejudicial. The Court should enforce the Agreement and award damages of $300,000.00. That way, the City may pursue relief from its carriers without further prejudice to Coppola.

*Defendant's Opposition*

The City argues that Coppola's motion is without support. The Agreement is conditioned

---

[1] The Court motions for "good faith settlement" determination were made under California Code Civil Procedure §§ 877, 877.6. See Doc. Nos. 504, 505, 506.

3

in part on payment from the City once a dismissal is filed. However, no dismissal has been filed. The Agreement is further conditioned upon the City reaching agreement with its insurers. However, the City has been unable to reach agreement with its insurers because the insurance carriers point to an interconnection of insurance coverage for this case and the *Mission Linen* case, and the insurers desire to settle both cases together. Coppola has known of this problem since it was disclosed during the August 7, 2017 status conference with the Court, which led to the August 28 order for a mandatory settlement conference in both this case and *Mission Linen*. While the City continues to negotiate with its carriers, its obligation to make payments under the Agreement is not triggered until an agreement with the insurers is reached.

*Plaintiff's Reply*

Coppola argues that the City had represented both prior to and after signing the Agreement that it was prepared to file mutual dismissals, and represented to the Court that it was prepared to settle. The City knew that reaching an agreement with its carriers was a contingency to finalizing the settlement and still made the statements. While the City now explains that there is no agreement between itself and its insurance carriers, it must be asked why the City made contrary representations to the parties and the Court. With respect to the City's reliance on the pending litigation in *Mission Linen* as causing an insurance problem, this case and *Mission Linen* are separate cases, and the Agreement does not mention and is not dependent on the resolution of *Mission Linen*. With respect to the dismissal requirement of the Agreement, the Agreement does have a "joint dismissal" section. However, a reactionary dismissal would not facilitate the closure of this case because the City would still have a pending claim. Coppola contends that it cannot dismiss without the City's mutual dismissal and verification that it is, in fact, prepared to fund the settlement as provided in the Agreement. Additionally, Coppola emphasizes that enforcement of the Agreement and money damages are necessary to avoid prejudice. The Agreement does not provide for a path forward, and Coppola is left to sit and wait in hopes that the City will resolve the disputes with its carriers. The DTSC wants to proceed with clean up at the site, and the City's obligations under the Agreement are part of the remediation effort. So that this case may end and clean up begin, the Court should order specific performance and the payment of $300,000.

*Legal Standard*

In the usual litigation context, "courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it," irrespective of the actual merits of the controversy. Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978); see Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."). "Assuming both the power of the attorney to bind his client and the validity of the agreement struck, a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship." Dacanay, 573 F.2d at 1078; see In re Springpark Assocs., 623 F.2d 1377, 1380 (9th Cir. 1980). "A settlement agreement is treated as any other contract for purposes of interpretation." United Commer. Ins. Serv. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). The interpretation of a settlement agreement is governed by principles of state contract law, even if a federal claim is "settled" or "released."[2] Jones v. McDaniel, 717 F.3d 1062, 1067 (9th Cir. 2013); Botefur v. City of Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Erdman v. Cochise Cnty, 926 F.2d 877, 879 n.2 (9th Cir. 1991); Callie, 829 F.2d at 890.

*Discussion*

There is no dispute that the Agreement is a valid contract. The issue is whether Coppola can force the City to provide $300,000.00, per the terms of the Agreement. If the City had simply agreed to pay $300,000.00, the matter would be straightforward. However, as explained above, the City contends that payment is subject to two conditions. After reviewing the Agreement, the Court agrees with the City that at least one condition precedent has not been met.

"A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ. Code § 1436; Barroso v. Ocwen Loan Servicing, LLC, 208 Cal.App.4th 1001, 1009 n.3 (2012). ""The existence of a condition precedent normally depends upon the intent of the parties as determined from the words

---

[2] The Agreement expressly states that it is governed by California law. See Greben Dec. Ex. A at ¶ 6.9.

they have employed in the contract." Barroso, 208 Cal.App.4th at 1009; see Sosin v. Richardson, 210 Cal.App.2d 258, 264 (1962) ("Express conditions are stated in the contract and are determined by the intention of the parties as disclosed by the agreement."). Because conditions precedent are generally disfavored, the "rule is that provisions of a contract will not be construed as a condition precedent in the absence of language plainly requiring such construction." Barroso, 208 Cal.App.4th at 1010; Sosin, 210 Cal.App.2d at 264. If a condition precedent is not fulfilled or excused, the corresponding duty to perform does not arise, and a breach of contract claim is precluded. See Platt Pac., Inc. v. Andelson, 6 Cal. 4th 307, 313-14 (1993); Witte v. Taylor, 110 Cal. 224, 225 (1895); Alki Partners, LP v. DB Fund Servs., LLC, 4 Cal.App.5th 574, 592 (2016); R.J. Kuhl Corp. v. Sullivan, 13 Cal.App.4th 1589, 1601 (1993); Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal.App.3d 1371, 1390 (1990) ("Where contractual liability depends upon the satisfaction or performance of one or more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action."); Kadner v. Shields, 20 Cal.App.3d 251, 258 (1971) ("If the condition is not fulfilled, the right to enforce the contract does not evolve.").

Here, Section 3 of the Agreement is entitled "Conditions." See Greben Dec. (Doc. No. 509-2) Ex. A. Immediately under the title "Conditions," the Agreement states that it "is contingent upon the following conditions." Id. Paragraph 3.1 then states that the "Agreement is conditioned on settlements in this Lawsuit . . . (2) [by and between] the City and the City's insurance carriers . . ., as such settlements are a material part of the global settlement between the Parties."[3] Id. The language of Section 3 and Paragraph 3.1 expressly states that a separate settlement between the City and its insurance carriers is a condition to effectuating settlement between the City and Coppola in this case. The condition in Paragraph 3.1 is further confirmed under Section 4 entitled "Mutual Releases," where the Agreement explains that a release from the City to Coppola is "*subject to consummation of the underlying settlement agreement between City and its insurer carriers* related to settlement of the Lawsuit . . . ." Id. at Ex. A ¶ 4.1 (emphasis

---

[3] Paragraph 3.1 requires Coppola, the City, and Laster to obtain separate settlements from each of their respective insurance carriers. See Greben Dec. Ex. A at ¶ 3.1.

6

added). Coppola does not contend that the language of Section 3 and Paragraph 3.1 is anything other than a condition for a separate agreement with insurance carriers. Under these circumstances, the Court can only conclude that Section 3 and Paragraph 3.1, plainly condition settlement between the City and Coppola upon the City reaching a separate settlement with its insurance carriers. See Barroso, 208 Cal.App.4th at 1009; Sosin, 210 Cal.App.2d at 264.

The City's counsel has declared that the City and its two primary insurers "have not come to an agreement as to the language by which these two insurers will pay any money to the City, or on its behalf, with regard to the Coppola or Mission Linen cases." Herr Dec. ¶ 3. The City's counsel further explains that the insurers "have conditioned payment to the City upon reaching an agreement with them resolving their involvement in both the Coppola and Mission Linen cases. Such an agreement is still being negotiated." Id. at ¶ 5. The City does not explain when the difficulties between it and its insurers began. The difficulty could have arisen after the Agreement was signed, or after various representations by the City to the Court and Coppola were made. It could also be possible that the difficulty and lack of agreement existed well before the Agreement was signed. In any event, what is reasonably clear is that the evidence shows that there is no settlement between the City and its insurers, apparently due to complications related to *Mission Linen*. Because there is not a settlement between the City and its insurers, the Agreement's express condition precedent has not been satisfied. See Agreement ¶ 3.1; Herr Dec. ¶¶ 3, 5. Without a settlement between the City and its insurers, the City is not obligated to pay Coppola $300,000 or to release its claims. See Cal. Civ. Code § 1436. Therefore, there is an insufficient basis for the Court to enforce payment of the $300,000 or to require the City to release its claims against Coppola.[4] See Platt Pac., 6 Cal. 4th at 313-14; Witte, 110 Cal. at 225; Alki Partners, 4 Cal.App.5th at 592; R.J. Kuhl, 13 Cal.App.4th at 1601; Careau, 222 Cal.App.3d at 1390; Kadner, 20 Cal.App.3d at 258. Coppola's motion will be denied.

---

[4] The City also contends that payment of $300,000 is conditioned on the filing of a dismissal in this Court. Paragraph 3.2 expressly provides payment by the City "within 30 days after the date of the filing of the dismissal of the action." Greben Dec. Ex. A at ¶ 3.2. However, Coppola's position that there is little point to filing a dismissal without assurance that the City and/or its carriers will fund the $300,000 is persuasive. Based on the briefing and the language of the Agreement, a reasonable reading of Paragraphs 3.1 and 3.2 is that the condition of Paragraph 3.1 first must be met before Paragraph 3.2 begins to operate. Here, because Paragraph 3.1 has not been fulfilled or shown to be excused, Paragraph 3.2 does not yet apply.

Coppola contends in reply that the Agreement is not contingent on the *Mission Linen* case, and that the City's reliance on *Mission Linen* is not proper. The Court agrees that the Agreement does not mention *Mission Linen* in any way, including conditioning settlement upon a resolution of that separate case. Nevertheless, the Court does not take the City to argue that resolution of *Mission Linen* is a new term to the Agreement, rather, the City is explaining why it cannot reach a settlement with its carriers. The Agreement conditions settlement of this case on a separate settlement between the City and its carriers, but it does not address a failure to obtain such a settlement due to a particular reason. That is, if the carriers refused to enter into a settlement with the City because the carriers evaluated the damages differently, or the carriers wanted to resolve *Mission Linen*, or the carriers are just being recalcitrant, the result is still the same – the condition is not fulfilled because there is no settlement. The bottom line is that there is no settlement, even if it is for a reason that Coppola finds disagreeable, and the condition of Paragraph 3.1 is not met.[5]

## **II.**     **Further Proceedings**

With the denial of Coppola's motion, this case remains pending between the City and Coppola, but there are no operative dates. It is appropriate for the parties to meet and confer regarding the best way forward, including the setting of a new trial date. As part of their meet and confer efforts, the parties may wish to discuss the potential impact (if any) of *Mission Linen* on this case. As both counsel are aware,[6] the evidentiary portion of a bench trial in *Mission Linen* has ended, and closing arguments will be made on April 9, 2017. The outcome of *Mission Linen* (at least at the District Court level) should be known shortly after the closing arguments.[7]

---

[5] The Court notes that Coppola argues in reply that the City's representations should excuse the condition precedent and that the Court should require the City's counsel to testify regarding his representations to the Court and the parties that a settlement was in place with the carriers. However, Coppola cites no authority in support of its argument or request. Such bare assertions by counsel, that are unsupported by citation to appropriate authority, are not helpful. Without citation to pertinent authority, the Court considers these points to be insufficiently developed.

[6] Counsel for Coppola is also counsel for the plaintiff in *Mission Linen*, and the City's counsel in this case is the same counsel in *Mission Linen*.

[7] The Court notes that the parties in *Mission Linen* were able to substantially streamline the trial proceedings through stipulations and joint exhibits. The parties in this matter should meet and confer and attempt, to the extent possible, to streamline the presentation of evidence for this case in the same manner, if this case proceeds to trial.

8

Additionally, although the Court has found that a condition precedent has not been satisfied, the "nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons." Platt Pac., 6 Cal.4th at 314. Coppola's papers did not sufficiently address conditions precedent or legally recognized excuses for the non-occurrence of a condition precedent. If, after conducting research, and consistent with Rule 11, Coppola concludes that there is a legally recognized excuse for the failure of the condition precedent, then Coppola may notify the Court that it wishes to file a successive motion to enforce the Agreement. Before notifying the Court, the parties will meet and confer regarding such a motion. Once the Court is notified by Coppola that it wishes to pursue a second motion, the Court will set a briefing schedule. Of course, such a motion must be supported by appropriate evidence and citation to pertinent authority.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to enforce settlement (Doc. No. 509) is DENIED;
2. No later than twenty one (21) days from service of this order, the parties shall meet and confer and discuss the matters raised in this order;
3. No later than twenty-eight (28) days from service of this order, Plaintiffs shall inform the Court through e-mail to the courtroom deputy (with opposing counsel included) whether they wish to pursue a second motion to enforce settlement; and
4. Once the Court has received notification from Plaintiffs, the Court will either set a briefing schedule or a telephonic status conference, depending on what Plaintiffs decide.

IT IS SO ORDERED.

Dated:   February 2, 2018                            _____
                                                    SENIOR DISTRICT JUDGE